## RESOLUTION TRUST CORPORATION, Plaintiff,

v.

## Ernest M. FLEISCHER, et al., Defendants.

### No. 93–2062–JWL.

United States District Court, D. Kansas.

Oct. 21, 1993.

---

H. David Barr, Andrea J. Goetze, Gage & Tucker, Overland Park, KS, William L. Turner, Bernard J. Rhodes, R. Kent Sellers, Mike L. Racy, Gage & Tucker, Kansas City, MO, Mira N. Marshall, Resolution Trust Corp., Legal Div.–Prof. Liability Section, Washington, DC, for Resolution Trust Corp.

James Borthwick, Michael Thompson, Brian C. Fries, Christopher A. Koster, Blackwell, Sanders, Matheny, Weary & Lombardi, Charles W. German, Brant M. Laue, Robert M. Thompson, Rouse, Hendricks, German, May & Shank, Kansas City, MO, for Ernest M. Fleischer and Mary Greene.

Kathleen A. Hardee, Thomas H. Stahl, Hoskins, King, McGannon & Hahn, Kansas City, MO, for Duane H. Hall, Ronald L. Pfost.

John R. Toland, Toland & Thompson, Iola, KS, James Borthwick, Michael Thompson, Brian C. Fries, Christopher A. Koster, Blackwell, Sanders, Matheny, Weary & Lombardi, Charles W. German, Brant M. Laue, Robert M. Thompson, Rouse, Hendricks, German, May & Shank, Kansas City, MO, for Glenn O. McGuire and Harold Yokum, Stanley Dreher, Jr.

Delton M. Gilliland, Coffman, Jones & Gilliland, Lyndon, KS, Charles W. German, Brant M. Laue, Robert M. Thompson, Rouse, Hendricks, German, May & Shank, Kansas City, MO, for Harry T. Coffman.

Richmond M. Enochs, Francis R. Peterson, Wallace, Saunders, Austin, Brown & Enochs, Overland Park, KS, for Thomas R. Weigand.

Thomas R. Weigand, pro se.

Thomas E. Gleason Jr., Thomas E. Gleason, Chartered, Ottawa, KS, Charles W. German, Brant M. Laue, Robert M. Thompson, Rouse, Hendricks, German, May & Shank, Kansas City, MO, for Lawrence H. Kramer.

Greer S. Lang, Leonard B. Rose, Rose, Brouillette & Shapiro, P.C., Kansas City, KS, Charles W. German, Brant M. Laue, Robert M. Thompson, Rouse, Hendricks, German, May & Shank, Kansas City, MO, for Ted Greene, Jr.

James Borthwick, Michael Thompson, Brian C. Fries, Christopher A. Koster, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, for Barbara J. Fleischer, Boatmen's First Nat. Bank of Kansas City, Ernest W. Fleischer, Pamela Fleischer, Thomas G. Greene, Larry D. Greene, Gail L.

Cluen, Douglas C. Greene, Judith Fleischer, and Elizabeth Fredkin.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

### I. Introduction

This case involves a suit brought by plaintiff Resolution Trust Corporation ("RTC") alleging multiple causes of action against former directors and officers of Franklin Savings Association ("FSA").[1] The matter is currently before the court on plaintiff's motion to strike defenses (Doc. #111); defendant Fleischer's motion to compel discovery (Doc. #134); and defendants' request for oral argument (Doc. #146).[2] In its motion to strike defenses, plaintiff seeks a ruling from this court striking certain affirmative defenses pled by defendants, including comparative negligence and mitigation of damages.[3]

The defendants argue, quite strenuously, that the motion to strike defenses should be denied as to their defenses of comparative negligence and mitigation of damages because of what they contend is the fatally flawed analysis which has led so many courts to the conclusion that such defenses cannot be maintained against the RTC. The Tenth Circuit has not spoken to this subject. The court has thoroughly considered the points raised by all parties and has conducted extensive research of its own. Although some of defendants' points are not without merit, this court concludes that the Tenth Circuit will likely follow the overwhelming weight of authority and disallow these defenses. Thus, plaintiff's motion to strike (Doc. #111) is granted in part and denied in part[4] and defendants' motion to compel discovery (Doc. #134) is denied.

### II. Standard for Reviewing Motion to Strike

■ Rule 12(f) of the Federal Rules of Civil Procedure provides that "the court may order stricken from any pleading any insufficient defense." A defense is insufficient if, as a matter of law, it cannot succeed under any circumstances. *See In re Sunrise Securities Litigation*, 818 F.Supp. 830, 840 (E.D.Pa.1993); *F.D.I.C. v. Isham*, 782 F.Supp. 524, 530 (D.Colo.1992). The purpose of the rule is to minimize delay, prejudice, and confusion by narrowing the issues for discovery and trial. *See Resolution Trust Corp. v. Scaletty*, 810 F.Supp. 1505, 1515 (D.Kan.1992).

### III. Discussion

#### A. Comparative Negligence and Mitigation of Damages

Plaintiff's complaint in this case asserts tort claims against former directors and officers of FSA brought under Kansas law in its capacity as a receiver. Plaintiff asserts

---

1. The claims asserted by the plaintiff against defendants in this case are various state law causes of action arising out of a series of transactions involving tax-exempt revenue bonds known as credit enhancement projects and alleged losses sustained through various broker-dealer subsidiaries of FSA. A factual background of the claims is contained in our earlier memorandum and order dated June 25, 1993 which ruled on various motions to dismiss filed by defendants, 826 F.Supp. 1273.

2. The court has determined that oral argument would not materially assist the court in the determination of the pending matters. Therefore, defendants' motion for oral argument will be denied. *See* D.Kan. Rule 206(d).

3. The applicability of the affirmative defenses of comparative negligence and mitigation of damages is where the parties have most vigorously locked horns. Plaintiff's motion also seeks to strike defendants' defenses that plaintiff is barred by 12 U.S.C. § 1821(k) from bringing state law claims for simple negligence and defendants' allegation that plaintiff lacks standing to raise claims for damages to FSA subsidiaries.

4. The motion to strike will be granted as to all defenses which compare the fault of the RTC, whether those defenses are enumerated as comparative or contributory negligence, mitigation of damages or causation. The motion to strike will also be granted as to defenses based on an assertion that 12 U.S.C. § 1821(k) bars plaintiff from bringing state law claims for simple negligence. As to the defenses based on defendants' assertion that the RTC lacks standing to raise claims for damages to FSA subsidiaries, the court finds that it does not have sufficient facts before it to enable it to make a determination as to the possible applicability of those defenses. Therefore, plaintiff's motion will be denied as to defendants' lack of standing defenses.

claims under the theories of negligence, negligence per se, and breach of fiduciary duty. Plaintiff also asserts claims based on a breach of implied contract theory. Plaintiff's ability to pursue state law negligence causes of action against defendants in cases such as this was set forth in the Tenth Circuit's opinion in *F.D.I.C. v. Canfield,* 967 F.2d 443 (10th Cir.1992).

In negligence actions, Kansas employs a comparative fault scheme whereby a party bringing suit may only collect those damages which were proximately caused by the fault of another party. *See* K.S.A. § 60–258a. Parties cannot recover damages caused by their own fault. Strong policy reasons influenced the State of Kansas to enact its comparative fault statute, including a desire to impose individual liability based on the proportional fault of all parties and a desire that all litigation arising out of a certain circumstance take place in one action. *See Brown v. Keill,* 224 Kan. 195, 580 P.2d 867 (1978); *Mick v. Mani,* 244 Kan. 81, 766 P.2d 147 (1988).

Defendants in this case contend that because plaintiff has asserted state law negligence claims against them, Kansas principles of comparative fault should apply and their negligence should be compared to that of the RTC, whose negligence after taking control of the institution as conservator and later as receiver defendants contend contributed to eventual losses suffered by FSA. It would appear at first blush that defendants should be entitled to assert all state law defenses against plaintiff, including comparative fault. Interestingly, however, virtually every case to consider their argument has rejected it, whether it be brought under the guise of comparative fault, mitigation of damages or strict proof of causation.[5] The question is whether all these decisions are wrong, having blindly followed the lead of *Roy*[6] down the path to a foolish result in which no court has had the nerve to say, as the defendants do, that the emperor is unclothed, or whether they have a principled basis which merits their sweeping adoption of an apparently favored position for this particular litigant.[7] This is a fair question for defendants to put.

5. The following decisions have disallowed affirmative defenses by defendant directors and officers which sought to examine subsequent actions of officials of governmental banking agencies that may have contributed to losses: *F.D.I.C. v. Bierman,* 2 F.3d 1424 (7th Cir.1993); *Resolution Trust Corp. v. Gibson,* 829 F.Supp. 1103 (W.D.Mo.1993); *F.D.I.C. v. White,* 828 F.Supp. 304 (D.N.J.1993); *In re Sunrise Securities Litigation,* 818 F.Supp. 830 (E.D.Pa.1993); *Resolution Trust Corp. v. Hecht,* 818 F.Supp. 894 (D.Md. 1992); *Resolution Trust Corp. v. Scaletty,* 810 F.Supp. 1505 (D.Kan.1992); *F.D.I.C. v. Lowe,* 809 F.Supp. 856 (D.Utah 1992); *Resolution Trust Corp. v. Youngblood,* 807 F.Supp. 765 (N.D.Ga. 1992); *Resolution Trust Corp. v. Kerr,* 804 F.Supp. 1091 (W.D.Ark.1992); *Resolution Trust Corp. v. Greenwood,* 798 F.Supp. 1391 (D.Minn. 1992); *Federal Sav. and Loan Ins. Corp. v. Shelton,* 789 F.Supp. 1367 (M.D.La.1992); *F.D.I.C. v. Isham,* 782 F.Supp. 524 (D.Colo.1992); *F.D.I.C. v. Crosby,* 774 F.Supp. 584 (W.D.Wash.1991); *F.D.I.C. v. Stanley,* 770 F.Supp. 1281 (N.D.Ind. 1991); *F.D.I.C. v. Stuart,* 761 F.Supp. 31 (W.D.La.1991); *F.D.I.C. v. Eckert Seamans Cherin & Mellott,* 754 F.Supp. 22 (E.D.N.Y.1990); *F.D.I.C. v. Baker,* 739 F.Supp. 1401 (C.D.Cal. 1990); *F.D.I.C. v. Manatt,* 723 F.Supp. 99 (E.D.Ark.1989); *F.D.I.C. v. Greenwood,* 719 F.Supp. 749 (C.D.Ill.1989); *Federal Sav. and Loan Ins. Corp. v. Burdette,* 718 F.Supp. 649 (E.D.Tenn.1989); *F.D.I.C. v. Carlson,* 698 F.Supp. 178 (D.Minn.1988); *F.D.I.C. v. Renda,* 692 F.Supp. 128 (D.Kan.1988); *Federal Sav. and*

*Loan Ins. Corp. v. Roy,* 1988 WL 96570, 57 USLW 2099 (D.Md.1988). *But see Resolution Trust Corp. v. Evans,* 1993 WL 354796 (E.D.La. 1993); *F.D.I.C. v. Ashley,* 749 F.Supp. 1065 (D.Kan.1990).

6. *F.S.L.I.C. v. Roy,* 1988 WL 96570 (D.Md.1988), an unreported decision from the District of Maryland, was the first case in which a district court held that defendant directors and officers could not assert affirmative defenses based on subsequent negligent actions undertaken by officials of the Federal Savings and Loan Insurance Corporation, which had taken over supervisory control of an institution. The *Roy* court held that post-loan conduct of the FSLIC in its supervisory capacity cannot be made an issue by defendants, regardless of whether such activity is attacked through the guise of contributory negligence, assumption of risk or proximate cause of losses. The *Roy* court fashioned a public policy analysis in support of its position, stating that negligent directors and officers should bear the risk of errors in judgment made by government officials in attempting to save a failing institution as opposed to the innocent public.

7. Defendants in this case argue that the court's conclusion in *Roy* was erroneous, and that subsequent courts interpreting the question have blindly relied on the analysis of *Roy* to create a flawed body of case law. The court finds this argument by defendants to be overly simplistic.

Courts have advanced several rationales in holding that government conservators or receivers are insulated from affirmative defenses which place in issue their conduct after assuming control of an institution's assets. *See F.D.I.C. v. Benjes,* 815 F.Supp. 1415 (D.Kan.1993). These rationales include: (1) there is a public policy implicit in the federal statutes creating the FDIC, FSLIC and RTC that the public should not bear any losses due to errors in judgment by federal receivers or conservators (*Federal Sav. & Loan Ins. Corp. v. Burdette,* 718 F.Supp. 649 (E.D.Tenn.1989)); (2) the conduct of the FDIC, FSLIC or RTC in fulfilling its mandate, which includes marshalling the assets of a failed financial institution, should not be subjected to judicial second guessing (*F.D.I.C. v. Isham,* 782 F.Supp. 524, 532 (D.Colo.1992)); and (3) the absence of any duty between the FDIC and former officers and directors of a failed institution—the no-duty rule—means that government conservators or receivers are insulated from affirmative defenses which place in issue their conduct after assuming control of the institution's assets (*F.D.I.C. v. Carlson,* 698 F.Supp. 178 (D.Minn.1988); *F.D.I.C. v. Greenwood,* 719 F.Supp. 749 (C.D.Ill.1989)).[8]

The public policy concerns cited by courts for disallowing affirmative defenses that would bring into issue post conservator or receivership actions of governmental banking agencies were summarized by one court as follows:

> In cases of the failure of a savings institution, it is important to the public that the receiver rapidly and efficiently convert the assets of that institution to cash to repay the losses incurred by the insurance fund and the depositors for deposits not covered. Suits by the FSLIC as a receiver to recover assets, or to recover damages for wrongdoing, should not be encumbered by an examination in court of the correctness of any specific act of the FSLIC in its receivership. The rule that there is no duty owed to the institution or wrongdoers by the FSLIC/Receiver is simply a means of expressing the broad public policy that the banking laws creating the FSLIC and prescribing its duties are directed to the public good, and that every separate act of the FSLIC as a receiver in collecting assets is not open to second guessing in actions to recover damages from wrongdoing directors and officers. If there is no wrongdoing by the officer or director, there can be no liability, but if wrongdoing is established, the officer or director should not be allowed to set up as a defense a claim that would permit the detailed examination of the FSLIC's action as a receiver.

> When an individual becomes an officer or director of a savings and loan, they are aware that if that institution becomes insolvent, federal banking laws and regulations require that a receiver be appointed, often the FSLIC, to marshal the institution's assets as promptly as possible to avoid further injury to the insurance fund and the public at large. The special urgency required in the liquidation of a savings and loan, and a commercial bank, is a result of the special nature of the insurance fund and the procedure for collection and disbursements of assets as provided by Congress. This is a fact any officer or director of that institution should be aware of. Consequently, a director or officer of a failed savings and loan accused of wrongdoing should not be entitled, and should

---

While it is true that many of the courts that have subsequently ruled consistent with *Roy* have cited *Roy* in support of their conclusion, those courts were not bound by the *Roy* decision. Rather than accept defendant's contention that these courts blindly followed the "erroneous" holding in *Roy,* it must be assumed that the courts performed their proper function of independently analyzing the issue, merely citing *Roy* as support for their conclusion.

8. The court finds flaws in the "no duty" analysis standing alone. However, such an analysis

dovetails into the public policy reasons enunciated by courts in denying affirmative defenses that would permit detailed examination of conduct of government conservators or receivers after assuming control of an institution's assets. Indeed, characterization of the rule as the "no-duty" rule appears to be a misnomer, and the "no-duty" rule in actuality appears to be an expression of public policy grounds for disallowing affirmative defenses based on post conservator or receivership actions of governmental banking agencies.

not be surprised by an inability, to examine the conduct of a receiver of a failed institution in an attempt to reduce the recovery of the receiver in subsequent civil actions by the receiver.

*Federal Sav. and Loan Ins. Corp. v. Burdette,* 718 F.Supp. 649, 663–64 (E.D.Tenn. 1989).

More recently, in *F.D.I.C. v. Isham,* 782 F.Supp. 524 (D.Colo.1992), the court struck defendants' affirmative defenses based on its interpretation of the policy of the congressional insurance scheme. The court noted that "FDIC's own conduct cannot be used to defeat or reduce a recovery to the insurance fund because the FDIC does not act to benefit bank officers and directors. Moreover, the FDIC's conduct in fulfilling its mandate involves discretionary decisions that should not be subjected to judicial second guessing." *Id.* at 532. Nearly all of the cases listed in footnote 5 of this opinion contain public policy rationales similar to those in *Burdette* and *Isham* in support of their holdings.

It has long been a proper function for common law courts to identify public policy where necessary to apply and formulate legal rules. However, such policy must have a basis somewhere other than in the individual judge's sense of what the rule should be. "Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Muschany v. United States,* 324 U.S. 49, 66, 65 S.Ct. 442, 450, 89 L.Ed. 744 (1945).

The logical starting place for a court searching for the public policy inherent here is with the language of FIRREA itself. However, FIRREA contains no suggestion that affirmative defenses available to defendants sued under state law are to be denied to directors and officers sued by the RTC. FIRREA's sole reference to director and officer liability is found in 12 U.S.C. § 1821(k), which allows a conservator or receiver to bring suit "for gross negligence, including any similar conduct or conduct that demonstrates a greater duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable state law." No

strong public policy argument for denying affirmative defenses to directors and officers available under state law can be constructed from that section of FIRREA.

■ Although the court finds no strong public policy reasons for striking affirmative defenses appear in the particular language of FIRREA itself, the stated purposes for enactment of FIRREA indicate Congress intended to establish a mechanism whereby government regulators could swiftly and efficiently contain, manage and resolve failed savings associations in order to put the federal deposit insurance funds on a sound financial footing with an eye towards strengthening civil sanctions for those responsible for damaging depository institutions. *See* Financial Institutional Reform, Recovery and Enforcement Act of 1989, Pub.L. No. 101–73, §§ 101, 103 Stat. 183 (1989). Furthermore, other courts have found, and this court concurs, that the discretionary function exemption of the Federal Tort Claims Act evinces a strong public policy directive by Congress to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, which is applicable to deny the affirmative defenses of comparative negligence and mitigation of damages in the present context. *See* 28 U.S.C. § 2680(a); *United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *F.D.I.C. v. Bierman,* 2 F.3d 1424 (7th Cir.1993); *Resolution Trust Corp. v. Scaletty,* 810 F.Supp. 1505, 1516 (D.Kan.1992).

In *Gaubert,* the Supreme Court considered whether the conduct of the FHLBB and the Federal Home Loan Bank—Dallas, in overseeing a savings and loan institution, fell under the discretionary function exception of the FTCA. The federal agencies had involved themselves in the day-to-day management of the institution; nonetheless, when FSLIC later assumed the receivership of the institution, there was a considerable negative worth. At the same time, Gaubert, the thrift's former chairman and largest stockholder, filed a tort claim against the agencies, alleging that they were negligent in their management of the institution. The Court of Appeals for the Fifth Circuit ruled that the

agencies' functions were ministerial (non-discretionary) at the time when they assumed a supervisory role in day-to-day affairs. *Gaubert v. United States*, 885 F.2d 1284, 1290 (5th Cir.1989). Therefore, the appellate court ruled, the plaintiff could maintain an action under the FTCA.

On review, the Supreme Court disagreed. The Court noted that a general directive in 12 U.S.C. § 1464(a) mandated that the FHLBB regulate such institutions "giving primary consideration to the best practices of thrift institutions in the United States." However, the parties could not identify more specific regulations governing the agency's conduct. The Court further noted that "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 111 S.Ct. at 1274. The Court noted that "[d]ay-to-day management of banking affairs, like the management of other businesses, regularly require judgment as to which of a range of permissible courses is the wisest." *Id.* at 1275. The Court held that all of the challenged actions of the federal regulators involved the kind of policy judgement that the discretionary function exemption was designed to shield.

In *F.D.I.C. v. Bierman*, 2 F.3d 1424 (7th Cir.1993), the Seventh Circuit affirmed the district court's ruling that *Gaubert* conclusively determined that the FDIC is insulated from the affirmative defenses of contributory negligence and failure to mitigate because, under the FTCA, it is serving a discretionary function. The court stated:

> As the appellants here point out, the Court did not abandon the necessity for a case-by-case assessment of the function at issue, and the decision of the FDIC to initiate a suit against the directors of ACB is not precisely the same function as that at issue in *Gaubert*. Nevertheless, applying the criteria set forth by the Supreme Court in *Gaubert*, we think it clear that the FDIC was performing a discretionary function. The responsibilities that devolve onto the FDIC when a bank has failed

require quick and complex decisionmaking. We believe that excepting the FDIC from such affirmative defenses is consonant with the purpose of the discretionary function exception to the FTCA: Congress wishes to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.... [Thus] Congress took "steps to protect the Government from liability that would seriously handicap efficient government operations." *United States v. Varig Airlines*, 467 U.S. 797 [, 104 S.Ct. 2755, 81 L.Ed.2d 660] (1984) (quoting *United States v. Muniz*, 374 U.S. 150, 163 [, 83 S.Ct. 1850, 1858, 10 L.Ed.2d 805] (1963)).

> In short, even if assets were available on the DeVries agreements to defray the losses on those loans, and even if the FDIC's failure to claim these assets could be said to have been negligent during the liquidation process, the discretionary exception to the FTCA and the lack of a duty to the wrongdoers would prevent the assertion of affirmative defenses against the FDIC.

*F.D.I.C. v. Bierman*, 2 F.3d at 1424.

This court agrees with the Seventh Circuit's reasoning in *Bierman* and finds that the discretionary function exception to the FTCA provides a principled basis for barring the assertion of state law affirmative defenses based on alleged subsequent negligent actions by federal regulatory officials. We believe the Tenth Circuit would consider the policy behind FIRREA, when read in conjunction with the FTCA's discretionary function exception which seeks to prevent judicial second-guessing through tort actions of administrative decisions grounded in social, economic, and political policy, to be best effectuated by denying the affirmative defenses of comparative negligence and mitigation of damages.

Defendants contend that the striking of their affirmative defenses of comparative negligence and mitigation of damages entails a presumption of wrongdoing, effectively negating their ability to present a defense to the negligence claims. However, the court does not believe such a ruling deprives defen-

dants of their day in court. Plaintiff is still required to prove its case and defendants are entitled to vigorously defend the propriety of their actions or forbearance. The striking of defendants' affirmative defenses does operate to affect the amount of damages recoverable, but only following a finding that defendants were indeed negligent in the first place, and reflects the public policy that defendants who have been found to have been negligent should bear the brunt of losses as opposed to the innocent public.

Defendants make a further argument that the public policy reasons cited by courts in denying directors and officers the affirmative defenses of comparative negligence and mitigation of damages are not present here due to the unique factual circumstances of this case. FSA was under RTC management as a conservator for twenty-nine months before the Office of Thrift Supervision declared it insolvent and placed FSA into receivership. Defendants contend that the purpose of the conservatorship was not liquidation of the institution, rather the RTC was directed to preserve and protect FSA's assets and operate FSA as a going concern. Defendants further assert that the cases striking affirmative defenses are based on a receiver's responsibility to quickly marshal the assets of insolvent institutions, and thus have no application to actions taken by the RTC as conservator in this instance.

Contrary to defendants' assertions, the court does not believe the public policy reasons for striking affirmative defenses based on RTC misconduct depend upon either the reason a conservator or receiver was appointed or upon any distinction between the RTC as a conservator or as a receiver. By law, insolvency is but one of many grounds for the appointment of a conservator or receiver. *See* 12 U.S.C. § 1821(c)(5). The grounds for appointment include a wide range of other deficiencies, such as substantial dissipation of assets, unsafe or unsound conditions, violation of cease and desist orders, concealment of records, inability to meet obligations, violation of law, or undercapitalization. *Id.* In

this instance, the order appointing the RTC as conservator of FSA stated that FSA was in an unsafe and unsound condition, had depleted capital, and faced the likelihood of insolvency or substantial dissipation of assets. In earlier litigation, the Tenth Circuit reviewed the record and concluded that the "evidence clearly establishes the existence of the statutory grounds for the appointment of a conservator." *Franklin Sav. Ass'n. v. Director, Office of Thrift Super.,* 934 F.2d 1127, 1149 (10th Cir.1991).

The court finds that the appointment of the RTC as conservator in this case is based on the same considerations as are present when a receiver is appointed for a failing institution. In both instances, the RTC is taking control of the operations of an institution in order to minimize losses, stabilize the bank insurance fund, and (hopefully) achieve the highest return possible on troubled assets. The court therefore believes that the public policy considerations which prevent judicial second-guessing of administrative decisions grounded in social, economic and political policy apply as equally to RTC actions as a conservator as they do to RTC actions as a receiver.[9]

In reaching our conclusion that defendants' affirmative defenses of comparative negligence and mitigation of damages should be stricken, the court is concerned about the lack of review of RTC actions that such a holding seemingly condones. If the RTC's practices are indeed slipshod and it is causing, not preventing, losses there is little incentive to remedy the situation if the losses can be shifted to others from whom collection is available. However, this apparent lack of accountability must be balanced against the public policy reasons supporting the limitation on review in specific civil damage cases. Judge Saffels, in *Resolution Trust Corp. v. Gibson,* 829 F.Supp. 1103 (W.D.Mo.1993), in setting forth his reasoning for striking the defense of mitigation of damages stated that "[i]n reaching its decision, this court balanced the danger that the RTC would never be

---

9. The court in *F.D.I.C. v. Isham,* 782 F.Supp. 524 (D.Colo.1992) reached a conclusion identical to ours here in rejecting the proposition that rules governing striking of defenses should be determined by "shifting fine lines and subtle distinctions between the varying capacities of the FDIC and between ministerial and proprietary functions." *Id.* at 532.

held accountable if its actions were, in fact, irresponsible, with the policy of not forcing the public to bear the losses for errors in judgment." Like Judge Saffels in *Gibson*, this court has balanced the question of reviewability of RTC actions with the public policy reasons in reaching our determination that the affirmative defenses should be stricken and it finds that another forum must be sought in which to hold this agency to the strict scrutiny which these defendants demand.

Defendant Ted Greene has filed a separate response to plaintiff's motion in which he asserts that, due to the fact that he was not a director of FSA, his defense of contributory and/or comparative negligence by FSA should not be stricken. In that Mr. Greene was not a director, the court agrees that it is quite possible defenses could be available to him that are not available to other defendants who were directors of FSA. If it is shown that Mr. Greene's status is such that he should not be held responsible for FSA actions, he may be able to compare his negligence with that of the FSA directors pre-conservatorship. *See F.D.I.C. v. Benjes,* 815 F.Supp. 1415, 1420 (D.Kan.1993). Whether such a defense is available to Mr. Greene cannot be determined until further facts are developed concerning his status. In any event, to the extent Mr. Greene's defenses seek to compare the negligence of the RTC, or to impute negligence of FSA to the RTC, they are stricken.

### B. Applicability of State Law Negligence Claims

■ Several defendants have raised the defense that 12 U.S.C. § 1821(k) preempts state law and imposes a national standard of gross negligence for actions against directors and officers. However, defendants admit that the Tenth Circuit Court of Appeals has held that the gross negligence provision of section 1821(k) does not preempt state law simple negligence claims. *See F.D.I.C. v. Canfield,* 967 F.2d 443 (10th Cir.1992). Defendants acknowledge they have raised the defense only to preserve their rights as to this issue in the event that the United States Supreme Court disagrees with the Tenth

Circuit's decision in *Canfield.* Accordingly, this defense will be stricken.

### C. Lack of Standing

■ Defendants have asserted that the RTC lacks standing to pursue claims for alleged losses incurred by the broker-dealer subsidiaries. The court considered this issue in its earlier ruling on defendants' motion to dismiss. At that time the court denied defendants' motion to dismiss because it did not appear to the court that the RTC could prove "no set of facts" in support of its claim that would entitle it to relief. The court believes that a factual question remains in this area as to whether the broker-dealer counts involve direct damages to FSA. In light of the unresolved factual issues, the court finds plaintiff's motion to strike this defense to be premature and it is therefore denied.

### D. Defendant Fleischer's Motion to Compel Discovery

Defendant Fleischer's motion to compel discovery raises essentially two issues. The first issue concerning discovery on plaintiff's damage claims was resolved at the discovery conference held October 5, 1993 with the court's direction to plaintiff to provide its method of calculating damages to defendants by October 18, 1993.

The second issue raised in defendant's motion deals with the propriety of defendants' request for wide-ranging discovery regarding events which occurred following the appointment of the RTC as conservator for FSA on February 15, 1990. Defendants' brief motion to compel does little to define the precise contours of any dispute on post-conservatorship discovery. The only discovery request specifically identified in defendants' motion is plaintiff's first document request no. 44 which seeks "[a]ll documents concerning RTC actions after February 16, 1990 to foreclose on the Credit Enhancement Projects, sell any of the Projects or to realize value from property in which FSA had a secured interest." By letter dated September 21, 1993, plaintiff's counsel agreed to produce the requested documents "to the extent they establish the existence and amount of damages." At the same time, plaintiff refused to "produce documents concerning the RTC's

decision to foreclose, its strategy for foreclosure, etc." as "clearly protected by the no-duty and related doctrines."

Based upon our ruling striking defendants' affirmative defenses of comparative negligence and mitigation of damages, the court finds that any discovery relating to post-conservator actions of the RTC that goes beyond establishment of the existence and amount of damages is not proper. Accordingly, defendant Fleischer's motion to compel discovery will be denied.

*IV. Conclusion*

**IT IS, THEREFORE, BY THE COURT ORDERED THAT** plaintiff's motion to strike defenses (Doc. # 111) is granted in part and denied in part. The motion is granted as to the defenses of comparative fault, mitigation of damages and barring of state law simple negligence actions by 12 U.S.C. § 1821(k) and those defenses are stricken. The motion is denied as to the defenses asserting lack of standing by plaintiff to pursue claims for alleged losses incurred by FSA broker-dealer subsidiaries.

**IT IS FURTHER ORDERED THAT** defendant Fleischer's motion to compel discovery (Doc. # 134) is denied.

**IT IS FURTHER ORDERED THAT** defendants' request for oral argument (Doc. # 146) is denied.

**IT IS SO ORDERED.**