**RESOLUTION TRUST CORPORATION, Plaintiff,**

v.

**Ernest M. FLEISCHER, et al., Defendants.**

**No. 93–2062–JWL.**

United States District Court, D. Kansas.

Dec. 1, 1994.

H. David Barr, Charles J. Williams, Gage & Tucker, Overland Park, KS, William L. Turner, Bernard J. Rhodes, R. Kent Sellers, Jeffrey M. Pfaff, Mike L. Racy, Jean Paul Bradshaw, II, Gage & Tucker, Kansas City, MO, Mira N. Marshall, Resolution Trust Corp., Legal Div.–Prof. Liability Section, Robert H. Plotkin, Resolution Trust Corp., Professional Liability Section, Washington, DC, Andrea J. Goetze, N.L.R.B., New Orleans, LA, for Resolution Trust Corp.

James Borthwick, Michael Thompson, Christopher A. Koster, Blackwell, Sanders, Matheny, Weary & Lombardi, Charles W. German, Brant M. Laue, Robert M. Thompson, Rouse, Hendricks, German, May & Shank, Brian C. Fries, Kenner & James, P.C., Kansas City, MO, for Ernest M. Fleischer.

James Borthwick, Michael Thompson, J. Randall Coffey, Christopher A. Koster, Blackwell, Sanders, Matheny, Weary & Lombardi, Charles W. German, Brant M. Laue, Robert M. Thompson, Rouse, Hendricks, German, May & Shank, Brian C. Fries, Kenner & James, P.C., Kansas City, MO, for Mary Louise Greene, John A. Scowcroft.

Renana B. Abrams, Robert P. Wray, Thomas H. Stahl, Jennifer P. Kyner, Armstrong, Teasdale, Schlafly & Davis, Kathleen A. Hardee, Hoskins, King, McGannon & Hahn, Kansas City, MO, for Duane H. Hall.

John R. Toland, Toland & Thompson, Iola, KS, James Borthwick, Michael Thompson, Blackwell, Sanders, Matheny, Weary & Lombardi, Charles W. German, Brant M. Laue, Robert M. Thompson, Rouse, Hendricks, German, May & Shank, Brian C. Fries, Kenner & James, P.C., Kansas City, MO, for Glenn O. McGuire, Harry Yokum.

Delton M. Gilliland, Coffman, Jones & Gilliland, Lyndon, KS, Charles W. German, Brant M. Laue, Robert M. Thompson, Rouse, Hendricks, German, May & Shank, Kansas City, MO, for Harry T. Coffman.

Richmond M. Enochs, Francis R. Peterson, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Overland Park, KS, for Thomas R. Weigand.

Thomas R. Weigand, pro se.

Thomas E. Gleason Jr., Thomas E. Gleason, Chartered, Ottawa, KS, Charles W. German, Brant M. Laue, Robert M. Thompson, Rouse, Hendricks, German, May & Shank, Kansas City, MO, for Lawrence H. Kramer.

John R. Toland, Toland & Thompson, Iola, KS, Charles W. German, Brant M. Laue, Robert M. Thompson, Rouse, Hendricks, German, May & Shank, Kansas City, MO, for Stanley Dreher, Jr.

Greer S. Lang, Leonard B. Rose, Rose, Brouillette & Shapiro, P.C., Kansas City, MO, Charles W. German, Brant M. Laue, Robert M. Thompson, Rouse, Hendricks, German, May & Shank, Kansas City, MO, for Ted Greene, Jr.

Renana B. Abrams, Thomas H. Stahl, Jennifer P. Kyner, Armstrong, Teasdale, Schlafly & Davis, Kathleen A. Hardee, Hoskins, King, McGannon & Hahn, Kansas City, MO, for Ronald L. Pfost.

James Borthwick, Michael Thompson, Christopher A. Koster, Blackwell, Sanders, Matheny, Weary & Lombardi, Brian C. Fries, Kenner & James, P.C., Kansas City, MO, for Barbara J. Fleischer, Boatmen's First Nat. Bank of Kansas City, Pamela Fleischer, Thomas G. Greene, Larry D. Greene, Gail L. Cluen, Douglas C. Greene, Judith Fleischer, Elizabeth Fredkin.

James Borthwick, Michael Thompson, J Randall Coffey, Christopher A. Koster, Blackwell, Sanders, Matheny, Weary & Lombardi, Brian C. Fries, Kenner & James, P.C., Kansas City, MO, for Ernest W. Fleischer.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

### I. Introduction

This case involves a suit brought by plaintiff Resolution Trust Corporation ("RTC") alleging multiple causes of action against former directors and officers of Franklin Savings Association ("FSA"). The claims asserted by the RTC against the defendants include various state law causes of action for negligence and breach of fiduciary duty arising out of a series of transactions involving tax-exempt revenue bonds known as credit enhancement projects and alleged losses sustained through various broker-dealer subsidiaries of FSA.[1]

This matter is currently before the court on defendant's motion to reconsider (Doc. # 368), in which defendants ask the court to reconsider its order of October 21, 1993 (the "Order")[2] striking their affirmative defenses of comparative negligence and failure to mitigate damages and overruling defendant Fleischer's motion to compel discovery as to post-conservatorship acts by the RTC. In the Order, this court ruled that public policy considerations founded on the purposes underlying the enactment of FIRREA, when read in conjunction with the FTCA's discretionary function exception, warranted striking defendants' affirmative defenses of comparative fault, causation and mitigation of damages, which involved examining whether the RTC, through actions undertaken after it took control of FSA, contributed to the damages which it seeks to recover from defendants.

The impetus for defendants' motion to reconsider was the June 13, 1994 decision rendered by the Supreme Court in *O'Melveny & Myers v. Federal Deposit Ins. Corp.*, —— U.S. ——, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994), wherein the Court held that it was not proper to adopt a judge-made federal rule to supplement the comprehensive and detailed statutory provisions of FIRREA. This court agreed with defendants that a reconsideration motion was in order, although beyond the time contemplated in the local rules for such a motion, because the Supreme Court's decision in *O'Melveny* called into question the legal conclusion adopted in the Order. Without objection by plaintiff, the court ordered the parties to submit additional briefing on the issue.

On October 19, 1994, just as the parties had completed the supplemental briefing requested by the court, the Tenth Circuit is-

---

1. A factual background of the claims is contained in our Memorandum and Order dated June 25, 1993, which ruled on various motions to dismiss filed by defendants.

2. The Order has been published at *Resolution Trust Corp. v. Fleischer*, 835 F.Supp. 1318 (D.Kan.1993).

sued its opinion in *Federal Deposit Ins. Corp. v. Oldenburg,* 38 F.3d 1119 (10th Cir.1994). In *Oldenburg,* the Tenth Circuit held that affirmative defenses challenging a receiver's conduct are not cognizable. However, the Tenth Circuit did not address the effect of *O'Melveny* in its *Oldenburg* decision. This court allowed the parties time to submit additional briefs as to the effect of *Oldenburg* on their earlier submissions.

Defendants have contended throughout this case that all the prior court decisions disallowing affirmative defenses which sought to examine subsequent actions of governmental financial institution regulatory agencies that may have contributed to losses were erroneous.[3] In the earlier Order, this court phrased the question as "whether all these decisions are wrong, having blindly followed the lead of *Roy* [4] down the path to a foolish result in which no court has had the nerve to say, as the defendants do, that the emperor is unclothed, or whether they have a principled basis which merits their sweeping adoption of an apparently favored position for this particular litigant." *Fleischer,* 835 F.Supp. at 1321. Defendants contend that based upon the Supreme Court's ruling in *O'Melveny,* it is apparent that the emperor was indeed unclothed, and our earlier analysis in which we rejected defendants' affirmative defenses was erroneous. Plaintiff, on the other hand, argues that *Oldenburg* mandates that defendants' motion to reconsider be denied, and that it is defendants' argument, rather than the emperor, that is unclothed.

The court has exhaustively reviewed the briefs submitted by the parties and the relevant case law. Following this review, the court believes that a reasonable argument can indeed be made that, in light of *O'Melve-*

ny, our earlier analysis in which we rejected defendants' affirmative defenses was erroneous. However, the court also finds that the Tenth Circuit's opinion in *Oldenburg* directly holds that when the FDIC sues to recover on the assets of a failed financial institution, the responsible officers and directors of such institution may not assert the affirmative defenses of contributory negligence and mitigation of damages against the FDIC. Accordingly, based on the Tenth Circuit's holding in *Oldenburg,* the court finds that defendant's motion to reconsider should be denied.

## II. Discussion

### A. Background

In this case, the RTC asserts state law negligence and breach of fiduciary duty claims against former directors and officers of FSA. The RTC's ability to pursue state law negligence causes of action against defendants in cases such as this was set forth in the Tenth Circuit's opinion in *Federal Deposit Ins. Corp. v. Canfield,* 967 F.2d 443 (10th Cir.1992).

In negligence actions, Kansas employs a comparative fault scheme whereby a party bringing suit may only collect those damages which were proximately caused by the fault of another party. *See* K.S.A. § 60-258a. Parties cannot recover damages caused by their own fault. Strong policy reasons influenced the State of Kansas to enact its comparative fault statute, including a desire to impose individual liability based on the proportional fault of all parties and a desire that all litigation arising out of a certain circumstance take place in one action. *See Brown v. Keill,* 224 Kan. 195, 580 P.2d 867 (1978); *Mick v. Mani,* 244 Kan. 81, 766 P.2d 147 (1988). Throughout this case, defendants

---

3. *See Fleischer,* 835 F.Supp. at 1321, n. 5 (listing 24 cases in which such defenses had been disallowed).

4. *F.S.L.I.C. v. Roy,* 1988 WL 96570 (D.Md.1988), an unreported decision from the District of Maryland, was the first case in which a district court held that defendant directors and officers could not assert affirmative defenses based on subsequent negligent actions undertaken by officials of the Federal Savings and Loan Insurance Corporation, which had taken over supervisory control of a financial institution. The *Roy* court

held that post-loan conduct of the FSLIC in its supervisory capacity cannot be made an issue by defendants, regardless of whether such activity is attacked through the guise of contributory negligence, assumption of risk or proximate cause of losses. The *Roy* court fashioned a public policy analysis in support of its position, stating that negligent directors and officers should bear the risk of errors in judgment made by government officials in attempting to save a failing institution as opposed to the innocent public.

have contended that because the RTC has asserted state law negligence claims against them, Kansas principles of comparative fault should apply and their negligence should be compared to that of the RTC, whose negligence after taking control of the institution as conservator and later as receiver defendants contend contributed to (or was the sole cause of) eventual losses suffered by FSA.

### B. The October 21, 1993 Order

In the earlier Order, this court noted that virtually every other court that had considered the issue had disallowed affirmative defenses by defendant directors and officers which sought to examine subsequent actions of officials of government financial institution regulatory agencies that may have contributed to losses, whether they be brought under the guise of comparative fault, mitigation of damages or strict proof of causation.[5] Indeed, since the Order was issued, the Fifth Circuit reached a similar conclusion barring such defenses. *See Federal Deposit Ins. Corp. v. Mijalis,* 15 F.3d 1314 (5th Cir.1994).

In the earlier Order, this court reviewed the rationales that courts have advanced in holding that government conservators or receivers are insulated from affirmative defenses which place in issue their conduct after assuming control of an institution's assets. Those rationales include: (1) there is a public policy implicit in the federal statutes creating the FDIC, the FSLIC and RTC that the public should not bear any losses due to errors in judgment by federal receivers or conservators; (2) the conduct of the FDIC, FSLIC or RTC in *fulfilling its mandate,* which includes marshaling the assets of a failed financial institution, should not be subject to judicial second guessing; and (3) the absence of any duty between the FDIC, FSLIC and RTC and former officers and directors of a failed institution—the no-duty rule—means that government conservators or receivers are insulated from affirmative defenses which place in issue their conduct after assuming control of an institution's assets. *Fleischer,* 835 F.Supp. at 1322. This

court also noted that another approach taken by courts was to view the conservator or receiver's conduct in managing failed financial institutions as insulated from affirmative defenses by the discretionary function exception to the Federal Tort Claims Act ("FTCA"). *Id.* at 1323–24.[6]

Following an analysis of relevant authorities, this court reached the conclusion that defendants' affirmative defenses should be barred, stating:

> We believe the Tenth Circuit would consider the policy behind FIRREA, when read in conjunction with the FTCA's discretionary function exception which seeks to prevent judicial second-guessing through tort actions of administrative decisions grounded in social, economic and political policy, to be best effectuated by denying the affirmative defenses of comparative negligence and mitigation of damages.

*Fleischer,* 835 F.Supp. at 1324.

### C. The O'Melveny Decision

On June 13, 1994, the United States Supreme Court issued its decision in *O'Melveny & Myers v. Federal Deposit Ins. Corp.,* —— U.S. ——, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994). *O'Melveny* involved a suit brought by the FDIC as receiver for a failed California savings and loan against the thrift's former law firm. The FDIC alleged professional negligence and breach of fiduciary duty. Defendant O'Melveny moved for summary judgment, alleging, among other things, that under California law, knowledge of the fraudulent conduct of the thrift's officers must be imputed to the thrift, and hence to the FDIC, which, as receiver, stood in the thrift's shoes; and thus the FDIC was estopped from pursuing its tort claims. The district court granted summary judgment, but the Ninth Circuit reversed, saying that federal law governed defenses available to defendants in actions brought by the FDIC as receiver under state law. The appellate court found it significant that the FDIC became receiver "as part of an intricate regulatory scheme

---

5. *See Fleischer,* 835 F.Supp. at 1321, n. 5 (listing 24 cases in which such defenses had been disallowed).

6. Subsequent to our Order, this rationale was approved by the Fifth Circuit in *Federal Deposit Ins. Corp. v. Mijalis,* 15 F.3d 1314 (5th Cir.1994).

designed to protect the interests of third parties" which would be "frustrated by imputing the bank's inequitable conduct to the receiver, thereby diminishing the value of the asset pool held by the receiver and limiting the receiver's discretion in disposing of the assets." *Federal Deposit Ins. Corp. v. O'Melveny & Myers*, 969 F.2d 744, 752 (9th Cir.1992).

The Supreme Court addressed the question of whether, under FIRREA, California law or federal common law determines the question of whether the knowledge of corporate officers acting against the corporation's interest will be imputed to the FDIC when it sues as receiver of the corporation. *O'Melveny*, —— U.S. at ——, 114 S.Ct. at 2052. The Court stated that:

> In answering the central question of displacement of California law, we of course would not contradict an explicit federal statutory provision. Nor would we adopt a court made rule to supplement federal statutory regulation that is comprehensive and detailed; matters left unaddressed in such a scheme are presumably left subject to the disposition provided by state law.

*Id.* —— U.S. at ——, 114 S.Ct. at 2054.

Defendant O'Melveny asserted that application of those principles should result in the use of California law by reason of 12 U.S.C. § 1821(d)(2)(A)(i) [7] and the comprehensive legislation of which it was a part, FIRREA. The FDIC argued that § 1821(d)(2)(A)(i) "should be read as a nonexclusive grant of rights to the FDIC receiver, which can be supplemented or modified by federal common law; and that FIRREA as a whole, by demonstrating the high federal interest in this area, confirms the courts' authority to promulgate such common law." *Id.*

The Supreme Court flatly rejected the FDIC's argument, stating:

This argument is demolished by those provisions of FIRREA which specifically create special federal rules of decision regarding claims by, and defenses against, the FDIC as receiver. *See* 12 U.S.C. § 1821(d)(14) (1988 ed., Supp. IV) (extending statute of limitations beyond period that might exist under state law); §§ 1821(e)(1), (3), (precluding state-law claims against the FDIC under certain contracts it is authorized to repudiate); § 1821(k) (permitting claims against directors and officers for gross negligence, regardless of whether state law would require greater culpability); § 1821(d)(9) (excluding certain state-law claims against FDIC based on oral agreements by the S & L). Inclusio unius, exclusio alterius. It is hard to avoid the conclusion that § 1821(d)(2)(A)(i) places the FDIC in the shoes of the insolvent S & L, to work out its claims under state law, except where some provision in the extensive framework of FIRREA provides otherwise. To create additional "federal common-law" exceptions is not to "supplement" this scheme, but to alter it.

*Id.*

Having determined that judicial creation of a special federal rule was not proper under FIRREA, the Court went on to find that judicial creation of a special federal rule would not be justified even if FIRREA were not applicable to the instant receivership.[8] The Court noted that instances where a special federal rule is warranted are few and restricted, and are limited to situations in which there is a significant conflict between some federal policy or interest and the use of state law. *Id.* —— U.S. at ——, 114 S.Ct. at 2055. The Court found the FDIC had identified no significant conflict. Specifically, the Court rejected the argument that a federal rule of decision should be used because application of state law might deplete the federal

---

**7.** Section 1821(d)(2)(A)(i), which is part of a Title captioned "Powers and duties of [the FDIC] as ... receiver," states that "the [FDIC] shall ... by operation of law, succeed to—all rights, titles, powers, and privileges of the insured depository institution...."

**8.** In *O'Melveny*, the Supreme Court first analyzed the effect of FIRREA. The Court was reluctant

to rest its judgment on FIRREA alone, however, because there was some question as to whether FIRREA would have taken effect in time to be relevant to the case. Thus, as an alternative holding, the Court determined that judicial creation of a federal rule would not be justified even if FIRREA was inapplicable to the instant receivership.

insurance fund. Noting that the insurance fund argument "would support not just elimination of the defense at issue here, but judicial creation of new, 'federal common law' causes of action to enrich the fund", the Court stated that "there is no federal policy that the fund should always win." *Id.*

### D. Effect of O'Melveny

In *O'Melveny,* the Supreme Court found FIRREA to be a comprehensive and detailed federal statutory regulation. The Court stated that federal courts should not displace state law absent an explicit statutory provision, nor should courts promulgate court-made rules to supplement the statutory provisions, noting that matters left unaddressed are presumably left subject to the disposition provided by state law. *O'Melveny,* —— U.S. at ——, 114 S.Ct. at 2054. The Court clearly rejected the argument that FIRREA as a whole, by demonstrating the high federal interest in this area, gave courts authority to promulgate federal common law to supplement or modify its provisions. *Id.* The Court invoked the statutory construction doctrine of inclusio unius, exclusio alterius, concluding that the FDIC is in the shoes of the insolvent institution, to work out its claims under state law except where some provision in the extensive framework of FIRREA provides otherwise.

■ As this court noted in its earlier Order, FIRREA contains no suggestion that affirmative defenses available to defendants sued under state law are to be denied to directors and officers sued by the RTC. FIRREA's sole reference to director and officer liability is found in 12 U.S.C. § 1821(k), which allows a conservator or receiver to bring suit "for gross negligence, including any similar conduct that demonstrates a greater duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and deter-

mined under applicable state law." Simply put, there is no provision in FIRREA that would prohibit defendant directors and officers from utilizing valid state law defenses of comparative negligence, causation or mitigation of damages, even if such defenses would call into question subsequent actions of governmental financial institution regulatory agencies that may have contributed to losses. Based on *O'Melveny,* therefore, which instructs that courts should not promulgate rules to supplement the statutory provisions, a strong argument can be made that this court's earlier rejection of defendants' affirmative defenses on public policy grounds was erroneous, and that those defenses should be allowed to the extent provided under Kansas law.[9]

A good argument can also be made that reliance on the discretionary function exemption of the FTCA to bar such affirmative defenses evaporates in light of *O'Melveny.* *O'Melveny* establishes that, as to state law claims filed by receivers, state law controls[10] and that a receiver acts on behalf of the institution, not the United States: "... [T]he FDIC is not the United States, and even if it were we would be begging the question to assume that it was asserting its own rights rather than, as receiver, the rights of [the insured institution]." *O'Melveny,* —— U.S at ——, 114 S.Ct. at 2053. This language, on its face, would seem to indicate that a receiver acts on behalf of the financial institution, not the United States, and therefore FTCA exceptions would not be available to the receiver. However, despite the language in *O'Melveny* that the FDIC is not the United States, in *United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), the Supreme Court did apply the discretionary function exception of the FTCA to decisions made by the Federal Home Loan Bank Board in supervising the management of a financial institution.[11] Also, *O'Melveny* did

---

9. In light of *Oldenburg* the court has made no attempt to decide what Kansas law would hold on these points.

10. FIRREA "places the FDIC in the shoes of the insolvent S & L, to work out its claims under state law, except where some provision in the extensive framework of FIRREA provides other-

wise." *O'Melveny,* —— U.S. at ——, 114 S.Ct. at 2054.

11. *Gaubert* involved a suit filed by a former chairman of the board and shareholder of a financial institution against the government regulators. Defendants in our case argue that even if the FTCA discretionary function exception ap-

not involve conduct by employees of the financial institution regulatory agency, as the case concerned imputing the knowledge of the owners of the thrift before receivership. Thus, the Supreme Court did not specifically rule that district courts may not use the FTCA exceptions as a springboard for the creation of a federal common law rule to preempt otherwise applicable state law in this precise context.

### E. The Oldenburg Decision

On October 18, 1994, the Tenth Circuit issued its opinion in *Federal Deposit Ins. Corp. v. Oldenburg,* 38 F.3d 1119 (10th Cir. 1994). In *Oldenburg,* the FDIC brought suit against certain former officers and directors of State Savings & Loan Association of Salt Lake City, Utah (State Savings) for fraud and negligence in their operation of State Savings. A judgment for fraud was entered against Mr. Mandel, a former director of State Savings, in connection with State Saving's acquisition of a parcel of real estate in California known as Park Glen. On appeal, Mr. Mandel claimed that the district court erred by refusing to permit him to introduce evidence of the post-receivership conduct of the FDIC with respect to Park Glen. He argued that the FDIC's negligence and mishandling of assets under its control substantially contributed to the ultimate loss, making the court's finding that State Savings suffered $22,000,000.00 in damages from fraud and conspiracy clearly erroneous. Mr. Mandel contended that the district court erred in preventing him from introducing evidence of the FDIC's contributory negligence and failure to mitigate damages.

In reaching its decision in *Oldenburg,* the Tenth Circuit relied on the pre-*O'Melveny* decisions of the Seventh and Fifth Circuits in *Federal Deposit Ins. Corp. v. Bierman,* 2 F.3d 1424 (7th Cir.1993) and *Federal Deposit Ins. Corp. v. Mijalis,* 15 F.3d 1314 (5th Cir. 1994), stating that "[w]e believe the analysis of this issue, as expressed in *Bierman* and other cases, is sound, and we see no reason to depart from the majority rule in this

case." The court then quoted language from the *Roy* case that it would not be sound policy for the public to bear the risk of errors made by FDIC officials. In reaching its final decision, the court stated:

> Accordingly, we hold that when the FDIC sues to recover on the assets of a failed financial institution, the responsible officers and directors of such institution may not assert the affirmative defenses of contributory negligence and mitigation of damages against the FDIC. The district court therefore did not abuse its discretion when it refused to permit Mr. Mandel to introduce evidence of the post-receivership conduct of the FDIC in an attempt to reduce his liability for damages sustained as a result of the Glen Park transaction.

*Id.* at 1122.

■ This court finds that the Tenth Circuit's holding in *Oldenburg* dictates denial of defendants' motion to reconsider in this case. The *Oldenburg* court adopted the reasoning of *Bierman* and other cases that responsible officers and directors of a financial institution may not assert the affirmative defenses of contributory negligence and mitigation of damages against the FDIC.

Although this court finds the *Oldenburg* holding that the defenses of contributory negligence and mitigation of damages may not be asserted by directors and officers sued by the RTC controlling in this instance, the court does note that *Oldenburg* does not address any possible impact of the *O'Melveny* decision. The court in *Oldenburg* relies on the *Bierman* and *Mijalis* opinions, both of which were decided prior to *O'Melveny.* For the reasons discussed above, this court believes a reasonable argument can be made that *O'Melveny* calls into question the policy rationales relied on in *Bierman* and *Mijalis,* although that argument may not have been presented to the *Oldenburg* court.

### F. Interlocutory Review

■ The defendants have moved for interlocutory review by the Tenth Circuit pursu-

plies in that situation, it does not apply to bar defendants' affirmative defenses in the present case because the RTC has waived any sovereign immunity as to the matters sued upon by filing

suit. Defendants cite *Federal Deposit Ins. Corp. v. Hulsey,* 22 F.3d 1472 (10th Cir.1994) in support of this argument.

ant to 28 U.S.C. § 1292(b)(2). Under § 1292(b)(2), a district court may certify for appeal an otherwise unappealable interlocutory order if the court determines that "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Id.; Homeland Stores, Inc. v. Resolution Trust Corp.,* 17 F.3d 1269, 1271 (10th Cir.1994).

The court finds that the requirements for interlocutory review are met in this instance. The court has no trouble finding that this is a controlling question of law the immediate appeal of which could materially advance the termination of this case. The issue of whether the defendants can raise affirmative defenses implicating the RTC's conduct drives significant aspects of this case and has a tremendous effect on the conduct of the litigation. The RTC is seeking damages in excess of $100,000,000.00 from the defendants in this case, most or all of which defendants contend were caused by the RTC's own conduct, and the trial is estimated to take over two months to complete even if the defendants cannot avail themselves of these affirmative defenses. The affirmative defense issue has a profound effect on all aspects of this case, including discovery, relevancy determinations, trial preparation, trial conduct and, of course, the amount of final judgment, if any, against each defendant. This court believes that a final determination on this issue by the circuit court at this time would best serve considerations of judicial economy and fairness to the litigants rather than facing the possible prospect of re-trying such a lengthy case if *Oldenburg* is not determinative. The court, of course, does find it far more difficult to determine that there is "substantial ground for difference of opinion" in light of *Oldenburg.* However, because it is unclear whether *O'Melveny* derived arguments were presented to and rejected by the *Oldenburg* court, and because this is such a volatile area of the law, this court believes that a substantial ground for difference of opinion does exist and that the circuit should at least have the opportunity to put this issue to rest once and for all if it so chooses.

*III. Conclusion*

**IT IS, THEREFORE, BY THE COURT ORDERED THAT** defendant's motion to reconsider (Doc. # 368) is denied.

**IT IS FURTHER ORDERED THAT** defendant's request for an interlocutory appeal of this order is granted.

**IT IS SO ORDERED.**