**FEDERAL DEPOSIT INSURANCE COR-PORATION, a corporation existing under the laws of the United States, Plaintiff,**

v.

**Robert W. ISHAM, Eleanor J. Isham, Richard R. Mulligan, Lemont A. Hale, George C. Engel, Dan Leahy, William E. Jennings, Larry S. Chance, and Richard W. Ramler, Defendants.**

**Civ. A. Nos. 90–B–1983, 90–B–2004.**

United States District Court,
D. Colorado.

Jan. 16, 1992.

Wiley Y. Daniel, David S. Fein, Popham, Haik, Schnobrich & Kaufman, Ltd., P.C., Denver, Colo., Ervin L. Jones, Jr., Federal Deposit Ins. Corp., Professional Liability Section, Washington, D.C., Gary M. Jackson, Di Manna & Jackson, Denver, Colo., for plaintiff Federal Deposit Ins. Corp.

Richard L. Eason, Eason, Sprague & Wilson, P.C., Denver, Colo., for defendant George C. Engel.

Max A. Minnig, Jr., Carpenter & Klatskin, P.C., Denver, Colo., for defendant Larry S. Chance.

Joseph F. Colantuno, Morrato, Burrus & Colantuno, P.C., Englewood, Colo., for defendants Robert W. Isham and Eleanor J. Isham.

Patrick T. Murphy, Denver, Colo., for defendant Richard R. Mulligan.

Jon F. Sands, Bostrom & Sands, P.C., Denver, Colo., for defendant Richard W. Ramler.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Plaintiff Federal Deposit Insurance Corporation (FDIC) moves to: (1) disqualify counsel for Robert W. and Eleanor J. Is-

ham (the Ishams); (2) strike defendants' designation of non-parties; (3) strike certain affirmative defenses; and, (4) reconsider George Engel's motion to compel. The motion to disqualify was heard on January 3, 1992. The remaining motions are adequately briefed and oral argument will not materially assist their resolution. Because the Ishams' counsel ought to be a witness at trial and continued representation here creates an appearance of impropriety, FDIC's motion to disqualify Joseph Colantuno and his firm, Burrus, Pratt, McNery, and Colantuno, P.C., is granted. Defendants cannot designate non-parties by category and, thus, FDIC's motion to strike certain non-party designations is granted in part. Further, FDIC acts only for the benefit of the public and, therefore, FDIC's motion to strike is granted. Lastly, FDIC's motion to reconsider is denied.

This consolidated action arose out of the failures of the Bank of Winter Park and the Middle Park Bank (the banks). These sister banks were commonly owned and shared a number of common directors. On November 10, 1987, the Colorado State Bank Board found an emergency existed at the banks and authorized the Colorado State Bank Commissioner to take possession of the banks. Under C.R.S. § 11–5–105, the Commissioner appointed FDIC receiver for both banks. Upon acceptance of these receiverships, FDIC took possession of and title to all assets of the banks, including all claims asserted in this action. On November 11, 1987, FDIC/Receiver sold and assigned to FDIC/Corporate the defaulted loans at issue here and the right to sue the banks' former officers and directors.

FDIC filed these actions in November, 1990 against several former directors and officers of the banks, alleging failure to exercise due care in numerous loan transactions, breach of fiduciary duties, and self-dealing.

## I.

## MOTION TO DISQUALIFY

I must make specific findings and conclusions when ruling on a motion for disquali-fication of counsel. *Fullmer v. Harper*, 517 F.2d 20 (10th Cir.1975); *FDIC v. Sierra Resources, Inc.*, 682 F.Supp. 1167 (D.Colo.1987).

From 1980 until November, 1987, Colantuno and his firm provided legal counsel to the banks. The banks also employed other attorneys in their local communities. During this time, Colantuno and members of his firm represented the banks on several substantial matters, including the Moffat Stop loan, the Gettle and Klancke estates, and the Silver Creek Development letter of credit, which, in part, form a basis for FDIC's complaint here. Colantuno advised the banks regarding the proper form and amount of directors and officers liability insurance. He also negotiated with the FDIC concerning the Bank of Winter Park's relocation in 1980.

Colantuno further represented the Bank of Winter Park in extensive negotiations with state and federal banking regulators regarding the terms of a November 22, 1983 memorandum of understanding. He represented both banks in extensive negotiations with these regulators regarding June 3, 1987 cease and desist orders. Colantuno provided legal advice to the banks' boards of directors, many of whom are defendants in this action, concerning the memorandum of understanding, the cease and desist orders, and the questionable lending and management practices these regulatory devices were intended to address. Colantuno also maintained a personal on-going credit relationship with the Bank of Winter Park with loans exceeding $50,000.

Many of the allegations in FDIC's complaints relate directly to the practices criticized in the memorandum of understanding and the cease and desist orders, such as failure to comply with warnings, recommendations, and directives of state and federal banking regulators, failure to exercise adequate supervision over loan officers, making, approving, or funding loans in violation of applicable policies and procedures, and failure to establish and follow adequate collection procedures. *See,* Bank of

Winter Park Complaint ¶ 44 and Middle Park Bank Complaint ¶ 49. Furthermore, Colantuno and members of his firm represented the banks on at least three transactions identified in FDIC's complaints as negligent.

Most of the defendants here have indicated that they intend to assert reliance on advice of counsel as an affirmative defense. Richard Mulligan and George Engel state as affirmative defenses that they reasonably relied on the banks' attorneys in making decisions as directors, including decisions concerning compliance with state and federal laws and regulations. In answers to interrogatories, Engel specifically identified Colantuno and his firm as attorneys for the Bank of Winter Park upon whose advice he relied.

■ FDIC filed this motion to disqualify on October 24, 1991, three days after settlement negotiations failed. At that time, little discovery had been conducted. Therefore, I conclude that FDIC has not unduly delayed in bringing this motion and the Ishams' will not suffer hardship if their counsel is disqualified at this stage of the proceeding.

A motion to disqualify counsel is addressed to the sound discretion of the district court. *Greenebaum–Mountain Mortgage Co. v. Pioneer National Title Insurance Co.*, 421 F.Supp. 1348 (D.Colo.1976). The District of Colorado has adopted Colorado's Code of Professional Responsibility by Local Rule 306.

DR 5–102 provides in relevant part:

(a) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial.... ·

(b) a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

■ Colantuno's representation of the Ishams violates both subsections of DR 5–102. Notwithstanding the Ishams' declaration that they will not call Colantuno as a witness, it is obvious that he "ought" to be a witness. Several of the Ishams' co-defendants have indicated that they relied on the advice of the banks' counsel, who, in many relevant instances, was Colantuno or members of his firm. Colantuno "ought" to be called as a witness to establish this affirmative defense.

Moreover, it is obvious from the pleadings and arguments that Colantuno will be called as a witness by either the Ishams' co-defendants or the FDIC. No matter who calls Colantuno, his testimony may be prejudicial to his clients. It is reasonable to anticipate that Colantuno will testify that he gave the banks' directors, including the Ishams, proper legal advice which, in fact, they did not follow.

■ However, the mere violation of a disciplinary rule does not automatically result in disqualification. *Greenebaum–Mountain*, 421 F.Supp. at 1352–53. The critical question is whether the litigation can be conducted in fairness to all parties. Disqualification should not be imposed unless the claimed misconduct in some way "taints" the trial or the legal system. *Id.* at 1352.

Here, there is substantial risk that a jury will be confused by an advocate also appearing as a witness. The jury may attribute too much or too little weight to Colantuno's testimony because of his dual role. *See, FDIC*, 682 F.Supp. at 1170. In either event, Colantuno's dual role will taint the trial and give either plaintiff or defendants an unfair advantage in rebutting or advancing the affirmative defense.

In addition, Colantuno's dual role taints the legal system. Colantuno will be in the awkward position of testifying either that he gave proper legal advice to the defendants, which would undercut their defense, or that he gave them improper legal advice, which would harm his professional reputation. This Hobson's choice impermissibly taints the legal system generally.

Finally, under DR 9–101, there is a clear appearance of impropriety here where the banks' former lawyer is now defending former bank directors against FDIC's claims. While I hesitate to adopt the most cynical view of the general public, I cannot help but conclude that disqualification is necessary under DR 9–101 as well. *See, Osborn v. District Court*, 619 P.2d 41, 45 (Colo. 1980). The savings and loan crisis is pervasive. It has severely undercut public faith in the banking system. Unfortunately, the legal profession is intimately involved and, as a result, it has suffered a corresponding loss of public confidence. In light of Colantuno's former representation of these two failed banks, his current representation of directors accused of misconduct creates a clear appearance of impropriety and further undermines public faith in the integrity of the banking system and the legal profession.

Therefore, FDIC's motion to disqualify Colantuno and his firm from representing the Ishams in this action is granted.

## II.

## MOTION TO STRIKE NON–PARTY DESIGNATIONS

FDIC moves to strike Engel's, Mulligan's, and Ramler's generalized designation of non-parties under C.R.S. § 13–21–111.5(3)(b). Because their designation of non-parties by category is not the "best identification ... possible under the circumstances", plaintiff's motion to strike is granted in part.

C.R.S. § 13–21–111.5(3)(b) provides in relevant part:

Negligence or fault of a nonparty may be considered if ... the defending party gives notice that a nonparty was wholly or partially at fault within 90 days following commencement of the action.... The notice shall be given by filing a pleading in the action designating such nonparty and setting forth such nonparty's name and last known address, *or the best identification of such nonparty which is possible under the circumstances*, together with a brief statement of the basis for believing such nonparty to be at fault. (Emphasis added).

The statute is clear that the designation set forth the non-party's name and last known address. The issue here is whether the "best identification possible under the circumstances" exception applies to defendants' designations.

In his designation of non-parties, Engel lists "other loan officers of the Bank whose identities are unknown." Engel Notification ¶ 10. He also lists "appraisers and other consultants who were engaged by and consulted with the Bank...." Engel Notification ¶ 11. Lastly, he names "various officers, agents and representatives of the State of Colorado Banking Division and FDIC...." Engel Notification ¶ 32.

As potential parties at fault, Mulligan names in his 15th affirmative defense "officers, directors and employees of the Bank, appraisers, accountants, attorneys and other consultants of the Bank, other persons and entities who were borrowers from the Bank, or their guarantors, banking regulators and examiners...."

Ramler names in his designation of non-parties "other loan officers", "appraisers, attorneys, and accountants", and "various officers, agents, and representatives of the State of Colorado Banking Division and FDIC." Ramler Designation ¶¶ 10, 11, and 13. He also designated individual borrowers from the Banks by referencing FDIC's complaints. Ramler Designation ¶ 12.

The statute makes clear that a designation of non-parties is a pleading. As such, it is subject to the provisions of Fed. R.Civ.P. 11 requiring a reasonable factual investigation. *See generally, Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *Sealtite Corp. v. General Services Administration*, 614 F.Supp. 352, 355 (D.Colo.1985), ("Rule 11 imposes a personal duty on the attorney to stop, think and investigate"). Therefore, determination of whether the best identification possible has been made under the circumstances must take into account whether defendants conducted or could have conducted a reasonable investigation.

■ These defendants could not have conducted even the most cursory factual investigation before filing their designations. Given their former positions in the banks and their familiarity with bank regulations, defendants should have been able to identify the state and federal regulators who they allege are partially at fault. Likewise, these former directors should have been able to determine which specific bank loan officers, appraisers, attorneys, accountants, and consultants of the banks are potentially at fault.

■ Under the circumstances of this case, defendants' designation of non-parties by categories is not the best identification possible. For example, defendants have personal knowledge of the role in this case played by Colantuno and his firm. Although the statute does not define what constitutes the best possible identification, a party cannot satisfy the requirement merely by reciting that it does not currently know the name of a potential nonparty.

■ Moreover, because of the peculiar nature of Colorado's non-party statute, a designation may place a plaintiff in the position of defending the non-party to ensure full recovery from named defendants. Thus, a designation of non-parties must give a plaintiff sufficient notice of the non-parties' conduct so that plaintiff can prepare to address it. *Cf.* Fed.R.Civ.P. 8; *Eliminator, Inc. v. 4700 Holly Corp.*, 681 P.2d 536, 539 (Colo.App.1984), (pleading must give sufficient notice of transaction(s) involved). At the very least, the designation must set forth facts sufficient to permit a plaintiff to identify the transaction or occurrence which purportedly leads to the nonparty's fault. C.R.S. § 13–21–111.-5(3)(b), (designation requires a "brief statement of the basis for believing such nonparty to be at fault"). While the name of a nonparty is not necessarily required by the statute the inadequate notice in these designations constitutes a fatal pleading flaw.

■ Finally, these defendants neither allege that information required to make adequate designations was withheld from them, nor do they seek an extension under the statute to conduct an adequate investi-gation. Therefore, I grant plaintiff's motion to strike as to Engel Notification ¶¶ 10, 11 and 32, Mulligan 15th affirmative defense, and Ramler Designation ¶¶ 10, 11, and 13. However, Ramler's designation of non-parties by referencing individual borrowers named in plaintiff's complaints is sufficient and, therefore, FDIC's motion to strike is denied as to that designation.

### III.

### MOTION TO STRIKE AFFIRMATIVE DEFENSES

■ Under Fed.R.Civ.P. 12(f), plaintiff moves to strike affirmative defenses of failure to mitigate damages, contributory or comparative negligence, waiver, estoppel, ratification, consent, acquiescence, reliance on banking regulators, assumption of risk, lack of causation, and laches. Not all defendants asserted all of these defenses.

■ Motions to strike are generally disfavored, but are within the sound discretion of the district court. *See e.g., FSLIC v. Burdette*, 718 F.Supp. 649, 662 (E.D.Tenn. 1989). Such a motion seeks to strike affirmative defenses that are insufficient, redundant, immaterial, impertinent, or scandalous. An affirmative defense is insufficient if, as a matter of law, the defense cannot succeed under any circumstance. *Id.*

FDIC argues that, as a matter of law, defendants cannot maintain defenses by which the conduct of federal banking regulators eliminates or reduces defendants' liability for their otherwise wrongful acts. I agree and conclude that these defenses cannot succeed under any circumstance.

Many courts considering this question have concluded that federal banking regulators are to be treated differently than a normal plaintiff in a civil action. *See e.g., FSLIC v. Roy*, 1988 WL 96570, 1988 U.S. Dist. LEXIS 6840 (D.Md.1988), ("this is not an ordinary tort case. Rather it is one which arises within a special context, invoking special considerations of public policy").

■ Under the Federal Deposit Insurance Corporation Act, the FDIC's sole purpose is to promote the stability of the banking system. *See, D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). FDIC fulfills this purpose by insuring deposits in member banks and by acting as receiver for insured banks that have failed. *See, FDIC v. Harrison*, 735 F.2d 408, 412 (11th Cir.1984). Under this general scheme, FDIC's regulatory oversight of banks is intended only to protect depositors, the insurance fund, and the public, although a benefit may inure incidentally to bank officers and directors. *See, First State Bank of Hudson County v. United States*, 599 F.2d 558, 563 (3rd Cir.1979), *cert. denied*, 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980), (bank officers and directors cannot shift their responsibility to exercise due care onto the FDIC merely by purchasing insurance from it). Likewise, FDIC's actions as receiver for failed banks are undertaken only to fulfill its mandate to stabilize the banking system by protecting depositors and creditors of the failed bank and the public generally. *Cf. United States v. Gaubert*, —— U.S. ——, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). *See generally, FDIC v. Bank of Boulder*, 911 F.2d 1466, 1474 (10th Cir. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1103, 113 L.Ed.2d 213 (1991), (overarching statutory mandate to FDIC is to minimize loss to the insurance fund).

I hold that former officers and directors cannot interpose FDIC's conduct for their own benefit as an affirmative defense to their misconduct. *First State Bank of Hudson County*, 599 F.2d at 561–66; *Harmsen v. Smith*, 586 F.2d 156, 157 (9th Cir.1978); *FDIC v. Stuart*, 761 F.Supp. 31, 32 (W.D.La.1991); *FDIC v. Ashley*, 749 F.Supp. 1065, 1068 (D.Kan.1990); *FDIC v. Baker*, 739 F.Supp. 1401, 1406–7 (C.D.Cal. 1990); *FDIC v. Greenwood*, 719 F.Supp. 749, 750 (C.D.Ill.1989); *Burdette*, 718 F.Supp. at 663–64; *FDIC v. Carlson*, 698 F.Supp. 178, 179 (D.Minn.1988); *Roy*, 1988 WL 96570 at 1, 1988 U.S. Dist. LEXIS 6840 at 4; *FDIC v. Berry*, 659 F.Supp. 1475, 1484 (E.D.Tenn.1987). *But see, FDIC v. Harrison*, 735 F.2d 408, 412–13 (11th Cir.

1984); *FDIC v. Cherry, Bekaert & Holland*, 742 F.Supp. 612 (M.D.Fla.1990); *FDIC v. Carter*, 701 F.Supp. 730 (C.D.Cal. 1987).

The *Roy* court put forward a representative rationale in a case involving FDIC's sister corporation, the FSLIC:

FSLIC has been created for the purpose of preserving the integrity of the national banking system by providing an insurance fund to cover the deposits of failed and failing institutions. FSLIC owes no duty to those institutions or to those whose negligence has brought them to the brink of disaster. Self-evidently, it is the public which is the intended beneficiary of FSLIC.... Thus, nothing could be more paradoxical or contrary to sound policy than to hold that it is the public which must bear the risk of errors of judgment made by its officials in attempting to save a failing institution—a risk that never would have been created but for defendants' wrongdoing in the first instance.

*Roy*, 1988 WL 96570 at 1, 1988 U.S. Dist. LEXIS 6840 at 4. *See also, Burdette*, 718 F.Supp. at 663, ("[T]he banking laws creating the FSLIC and prescribing its duties are directed to the public good...."). I am persuaded by this rationale and adopt it here.

My holding extends to regulatory actions taken by FDIC/Corporate before an institution is closed, actions taken by FDIC as receiver after closure, and action taken by FDIC/Corporate as assignee of a failed bank's assets. *Baker*, 739 F.Supp. at 1406–7; *Greenwood*, 719 F.Supp. at 750; *Burdette*, 718 F.Supp. at 664; *Roy*, 1988 WL 96570 at 1, 1988 U.S. Dist. LEXIS 6840 at 3. *Cf. United States v. Gaubert*, —— U.S. ——, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), (day-to-day operational decisions of federal regulators can be discretionary, policy decisions subject to the exception in the FTCA).

Although some courts have expressed this rule in terms of absence of duty between FDIC and former officers and directors, FDIC's insulation from affirmative defenses which place in issue its conduct

more accurately rests on the policy embodied in the FDIC Act. *See e.g., Burdette,* 718 F.Supp. at 664, ("The rule that there is no duty owed to the institution or wrongdoers by the FSLIC/Receiver is simply a means of expressing the broad public policy that the banking laws creating the FSLIC and prescribing its duties are directed to the public good"). Put simply, FDIC's own conduct cannot be used to defeat or reduce a recovery to the insurance fund because the FDIC does not act to benefit bank officers and directors. Moreover, FDIC's conduct in fulfilling its mandate involves discretionary decisions that should not be subjected to judicial second guessing. *See e.g., Burdette,* 718 F.Supp. at 664, ("[I]f wrongdoing is established, the officer and director should not be allowed to set up as a defense a claim that would permit the detailed examination of the FSLIC's action. . . .").

Finally, this area of the law is plagued with shifting fine lines and subtle distinctions between the varying capacities of the FDIC and between ministerial and proprietary functions. The rule in this case paints a bright line and maintains focus on the persons whose alleged wrongdoing brought about an insolvency in the first instance.

■ Accordingly, the motion to strike the affirmative defenses of contributory or comparative negligence, failure to mitigate, waiver, estoppel, ratification, consent, acquiescence, reliance on banking regulators, and assumption of risk is granted. The defense of lack of causation is stricken to the extent that defendants seek to put FDIC's conduct at issue. However, defendants are free to contest that their negligence, if any, did not proximately cause the damages FDIC claims. As a matter of law, the defense of laches cannot be maintained against the FDIC, and that defense is stricken as well. *Baker,* 739 F.Supp. at 1407.

Because I grant FDIC's motion on the basis of public policy, I need not consider FDIC's alternative argument that the discretionary function exception in the Federal Tort Claims Act bars these defenses as well.

## IV.

### MOTION TO RECONSIDER

FDIC moves to reconsider the September 17, 1991 order of the chief magistrate judge granting Engel's motion to compel answers to his Interrogatories Nos. 33, 34, 35, and 36. Because these challenged questions could lead to admissible evidence on the question of proximate cause, the order is not clearly erroneous and motion is denied.

Accordingly, IT IS ORDERED THAT:

(1) FDIC's motion to disqualify Joseph Colantuno and his law firm from representing the Ishams' at trial is GRANTED;

(2) FDIC's motion to strike non-party designations is GRANTED as to all challenged designations except Ramler Designation ¶ 12;

(3) FDIC's motion to strike affirmative defenses is GRANTED; and

(4) FDIC's motion to reconsider is DENIED.