**RESOLUTION TRUST CORPORATION as Conservator for Pioneer Federal Savings and Loan Association, Plaintiff,**

v.

**TRI–STATE REALTY INVESTORS OF K.C., INC., Defendant.**

**No. 93–2245–JWL.**

United States District Court, D. Kansas.

Nov. 10, 1993.

Robert L. Hamann, David M. Bax, Timothy M. Henderson, Hamann, Holman, South, McCollum & Hansen, P.C., Prairie Village, KS, Tonya L. O'Hern, Lenexa, KS, Susan Ellmaker, Cynthia Clark Campbell, The Campbell Law Firm, Kansas City, MO, Susan Ellmaker, Overland Park, KS, for plaintiff.

Donald E. Bucher, Kansas City, MO, for defendant.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

#### I. Introduction

Plaintiff Resolution Trust Corporation as conservator for Pioneer Federal Savings and Loan brought suit against defendant Tri-State Realty Investors of K.C., Inc. for judgment on a promissory note. The matter is currently before the court on plaintiff's motion to dismiss defendant's affirmative defenses for lack of subject matter jurisdiction (Doc. # 19). In its motion, plaintiff seeks a ruling from the court that defendant's affirmative defenses of failure of consideration, fraud, duress and illegality (for the reason that the original loan violated federal "anti-tying" statutes [1]) are barred by defendant's

failure to avail itself of the mandatory administrative claims procedure set out in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). For the reasons set forth below, plaintiff's motion is granted.

#### II. Factual Background

This action on a promissory note was originally filed on March 16, 1993 in the District Court of Johnson County, Kansas and styled Pioneer Savings and Loan Association v. Tri-State Realty Investors of K.C., Inc., a Corporation, Case No. 92–C–2893 ("State Court Action"). On April 12, 1993, the Resolution Trust Corporation ("RTC") was appointed receiver for Pioneer Savings and Loan Association by the Office of Thrift Supervision ("OTS"). On the same date, Pioneer Federal Savings and Loan Association was chartered as a federal mutual savings association and the OTS appointed the RTC as conservator for the newly chartered Pioneer Federal. Also on April 2, 1993, the RTC as receiver sold, assigned, transferred, conveyed and delivered to the RTC as conservator certain assets, including the note which is the subject of the present action.

Subsequently, on May 6, 1993, the District Court of Johnson County, Kansas issued an order substituting RTC as conservator in the State Court Action. On June 6, 1993, the RTC as conservator removed the State Court Action to this court.

Defendant filed its second amended answer on July 29, 1993. "In its answer defendant asserted various affirmative defenses, including failure of consideration, duress, fraud and illegality for the reason that the loan the plaintiff now seeks to enforce against defendant originated under conditions that violate federal "anti-tying" statutes." Plaintiff alleges that Pioneer had conditioned the making of the loan on Tri-State's purchasing other property from and for the benefit of Pioneer.

Plaintiff's motion seeks to dismiss defendant's affirmative defenses on the grounds

---

1. Defendant alleges that Pioneer had conditioned the original making of the loan in question on defendant's purchase of other property from and for the benefit of Pioneer, in violation of the "anti-tying" provisions of 12 U.S.C. § 1971. In actuality, 12 U.S.C. § 1464(q), which is virtually identical to 12 U.S.C. § 1971, is the anti-tying statute applicable to Savings and Loans.

that the court lacks subject matter jurisdiction over the defendant's affirmative defenses due to defendant's failure to comply with FIRREA's mandatory administrative claim procedure. Defendant contends that its affirmative defenses are not "claims" subject to the administrative exhaustion requirements of FIRREA. In the event that the administrative exhaustion requirements of FIRREA are found applicable to defendant's affirmative defenses, defendant contends that the RTC has waived the exhaustion requirement by failing to provide it with actual notice of the need to present claims pursuant to FIRREA's claims procedure.

### III. Legal Standards

■ Although plaintiff styled its motion as a motion to dismiss, it should more properly have been brought as a motion to strike. Rule 12(f) of the Federal Rules of Civil Procedure provides that "the court may order stricken from any pleading any insufficient defense." A defense is insufficient if, as a matter of law, it cannot succeed under any circumstances. See In re Sunrise Securities Litigation, 818 F.Supp. 830, 840 (E.D.Pa. 1993); F.D.I.C. v. Isham, 782 F.Supp. 524, 530 (D.Colo.1992). The purpose of the rule is to minimize delay, prejudice, and confusion by narrowing the issues for discovery and trial. See Resolution Trust Corp. v. Scaletty, 810 F.Supp. 1505, 1515 (D.Kan.1992).

### IV. Discussion

#### A. The Exhaustion Requirement

■ Title 12 U.S.C. § 1821(d)(13)(D) provides as follows:

Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

Congress grants the RTC primary authority to determine claims and provides for a judicial determination of claims only after the RTC has either disallowed the claim or failed to act upon the claim. See 12 U.S.C. §§ 1821(d)(3) and 1821(d)(6). Section 1821(d)(13)(D) precludes suit in a federal court on a claim that is not first presented to the corporation and constitutes a mandatory exhaustion requirement. See Rosa v. Resolution Trust Corp., 938 F.2d 383 (3rd Cir. 1991); Office & Professional Employees Intern. Union, Local 2 v. F.D.I.C., 962 F.2d 63, 65 (D.C.Cir.1992). Therefore, FIRREA mandates administrative exhaustion of claims and failure to present a claim to the corporation precludes suit on the claim.

■ Defendant agrees that the administrative claim process is a jurisdictional prerequisite for instituting a suit in federal court and that assuming it received proper notice and asserted "affirmative claims" for relief, its claims would be barred. However, defendant contends that its affirmative defenses are not "claims" subject to the exhaustion requirement of FIRREA. Defendant argues that it has never sought to sue or countersue the RTC for anything and that its affirmative defenses are solely intended to negate or deny liability on Pioneer's promissory note. Defendant contends that because its defenses merely deny liability, and do not affirmatively seek payment from assets of the institution, the exhaustion requirement does not apply.

In F.D.I.C. v. Updike Bros., Inc., 814 F.Supp. 1035 (D.Wyo.1993) the court considered the question of whether affirmative defenses asserted in an action by the FDIC as receiver for a failed bank to recover deficiencies on a promissory note and mortgage were "claims" subject to FIRREA's exhaustion requirement. The Updike court first noted various rules of statutory construction, including its duty to construe FIRREA consistent with the intent of Congress as expressed in the plain meaning of its language. Id. at 1038. The court then reviewed the legislative history of FIRREA, stating as follows:

Congress enacted FIRREA in 1989 as a response to massive losses which were occurring in the nation's thrift industry and

its deposit insurance fund. Congress recognized that consumer confidence in the nation's savings and loan system was diminishing as a result of the crisis and that immediate resolution of the situation was imperative. In order to achieve this vital objective, Congress granted the receivers of failed institutions broad powers to enable them to address all problems posed by a failing financial institution.

Congress projected that the full thirty year cost of cleaning up the thrift industry would be $335 billion and put that cost in perspective by noting that the entire Marshall Plan to rebuild Europe after World War II cost only $13.3 billion. Congress also noted that several factors could serve to increase this amount, including higher than expected costs for case resolutions. Therefore, Congress enacted a scheme whereby the FDIC was empowered to administer a streamlined claims procedure designed to dispose of the bulk of claims against failed financial institutions expeditiously and fairly.

*Id.* at 1038 (citations omitted).

The *Updike* court then examined the specific language contained in FIRREA's exhaustion requirement. The court noted that the federal courts have broadly applied the exhaustion requirements to an extensive variety of claims. *Id.* at 1039. The court analyzed these cases and reached a determination that the affirmative defenses advanced by defendants were subject to the exhaustion requirements of FIRREA, stating:

> In light of the unambiguous language mandating the exhaustion requirement and in light of Congress' express fear that the costs of litigation would exacerbate an already catastrophic situation, it is patently clear that the jurisdictional bar of section 1821(d)(13)(D) reaches all claims seeking payment from the assets of the affected institution, all claims seeking satisfaction from those assets, and all claims relating to any act or omission of either the institution or the receiver regardless of whether the action is framed as a claim, counterclaim, or affirmative defense. Therefore, we find that the various counterclaims and affirmative defenses asserted by the defen-

dants in this case are "claims" subject to the exhaustion requirement mandated by FIRREA because they seek a determination of rights with respect to the assets of Guaranty and they relate to acts of both the institution and of the receiver.

*Id.* at 1040 (citations omitted).

Like the court in *Updike*, this court finds that the affirmative defenses raised by defendant are subject to the exhaustion requirement mandated by FIRREA. The court believes such a result best complies with the specific language of section 1821(d)(13)(D) and the legislative purpose behind the enactment of the exhaustion requirement. Section 13(d)(13)(D) specifically provides that this court shall not have jurisdiction over "any action seeking a determination of rights with respect to" the assets of any depository institution for which the RTC has been appointed receiver unless the administrative claims procedure has been utilized. There is no question here that defendant's affirmative defenses, which seek to limit or totally defeat the RTC's rights to collection on the note, seek a determination of rights with respect to the assets of the depository institution.

Furthermore, the court finds no merit to defendant's contention that its affirmative defenses should not be subject to the exhaustion requirement because they do not seek payment from the institution and thus are not "claims" subject to the exhaustion requirement. All of the defendant's affirmative defenses address defects with the loan at its inception and could have been affirmatively asserted as lender liability claims for damages or as bars to recovery on the note. Defendant's claims are denominated as "affirmative defenses" merely because of the posture of the parties now that the RTC has sued defendant on the note. This does nothing to change the fact that defendant could have asserted these claims in its own action had it desired to do so. Because defendant failed to assert its claims attacking the validity of the note within the time constraints provided in FIRREA, the court finds that its claims, now denominated as affirmative defenses, are barred.

## B. Notice

■ Defendant contends that even if its affirmative defenses are denominated as claims subject to the exhaustion requirements of FIRREA, there is no evidence in the record that the RTC has complied with the requirements of 12 U.S.C. § 1821(d)(3) concerning notice. Section 1821(d)(3)(B) states that "[t]he receiver, in any case involving the liquidation or winding up of the affairs of a closed depository institution, shall ... promptly publish a notice to the depository institution's creditors to present their claims, together with proof, to the receiver by a date specified in the notice which shall not be less than 90 days after the publication of such notice." Moreover, the receiver is also required to mail such a notice to any creditor shown on the institution's books at the creditor's last known address. 12 U.S.C. § 1821(d)(3)(C).

In response to defendant's argument, the RTC has provided the court with copies of cover letters and notices to creditors which were sent to (i) Mr. Donald E. Bucher, who was the attorney for defendant and was at the time engaged in litigation with Pioneer on behalf of defendant at the time Pioneer was placed into receivership; and (ii) Alhambra Holdings, Inc. f/k/a Tri–State Realty Investors, Inc. Additionally, the RTC has furnished a copy of an Affidavit of Publication from The Kansas City Star Company, dated April 9, 1993, which includes a copy of the Notice to Depositors and Creditors of Pioneer Savings published in the Kansas City Star newspaper on April 7, 1993. In light of this evidence, it is apparent that the RTC complied with the notice requirements of section 1821(d)(3).

The court notes that matters outside the pleadings are generally not considered in motions to strike and that if matters outside the pleadings are considered the motion should be treated as a motion for summary judgment with the adverse party given a chance to present pertinent factual material. However, in this case it does not appear to the court that there is any actual dispute remaining between the parties as to whether the RTC complied with the notice requirements. In the event defendant has evidence which it believes creates a good faith dispute as to whether the RTC complied with the notice requirements, the court will entertain such evidence. Defendant should present such evidence to the court in the form of a motion to reconsider, to be filed within ten days of the issuance of this order.

Additionally, the court notes that the Fifth Circuit has held that the RTC's failure to comply with the notice requirements of 12 U.S.C. § 1821(d)(3)(C) does not relieve a claimant of the obligation to exhaust administrative remedies. *Meliezer v. Resolution Trust Co.*, 952 F.2d 879, 882–83 (5th Cir. 1992). This court does not find it necessary to reach such a conclusion of law in this case due to the court's finding that the RTC in fact complied with the notice provisions. However, any motion to reconsider filed by defendant dealing with the RTC's failure to comply with the notice requirements should include a discussion as to why this court should reach a different conclusion than the Fifth Circuit did in *Meliezer*, as the effect of noncompliance by the RTC with notice requirements will then be at issue.

■ Defendant also argues that it gave the RTC statutory notice of its claims by filing its responsive pleadings in this case and that no further notice of its claims was required. This argument was rejected by the Tenth Circuit in *Resolution Trust Corp. v. Mustang Partners*, 946 F.2d 103 (10th Cir.1991) and we likewise reject it here.

## V. Conclusion

IT IS, THEREFORE, BY THE COURT ORDERED THAT plaintiff's motion to dismiss defendant's affirmative defenses for lack of subject matter jurisdiction (Doc. # 19) is granted. Defendant's affirmative defenses of failure of consideration, fraud, duress and illegality based on violations of federal "anti-tying" statutes are dismissed.

IT IS SO ORDERED.