Clayton UNGER, Individually, and as Representative of all plan participants and plan beneficiaries of the US West Pension Plan, Plaintiff,

v.

US WEST, INC., and US West, Inc. Employee's Benefit Committee, Defendants.

Civ. A. No. 94–B–2598.

United States District Court, D. Colorado.

June 20, 1995.

Curtis L. Kennedy, Denver, CO, for plaintiff.

Raymond W. Martin, Eiberger, Stacy, Smith & Martin, Denver, CO, D. Ward Kallstrom, Stacy M. Leopold, Lillick & Charles, San Francisco, CA, Russell P. Rowe, US West, Inc., Englewood, CO, Edward T. Ramey, Isaacson, Rosenbaum, Woods & Levy, P.C., Denver, CO, for defendants.

## AMENDED MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

This is an action for damages for alleged breach of fiduciary duties. Jurisdiction exists under 28 U.S.C. § 1331 and 29 U.S.C. §§ 1001 et seq., the Employee Retirement Income Security Act (ERISA or the Act). Plaintiff Clayton Unger (Unger) alleges that defendants breached their fiduciary duties by paying the US West Pension Plan (the Plan) administrator's expenses out of Plan funds contrary to its terms. Unger contends that these actions constitute a failure to (1) administer the "plan solely in the interest of the participants," (2) defray "reasonable costs of administering the plan," and (3) "administer the plan in accordance with the documents and instruments governing the plan." 29 U.S.C. §§ 1104(a)(1), (a)(1)(A) & (a)(1)(D).

Unger moves for summary judgment requesting a declaration that he is not required to exhaust administrative remedies under the Plan before bringing this action. A party may move for summary judgment on a "claim, counter-claim, or cross-claim or to

obtain a declaratory judgment." Fed. R.Civ.P. 56(a). The complaint does not request a declaratory judgment on the administrative exhaustion issue. Unger's motion in essence seeks a determination that defendants US West, Inc. (US West) and US West, Inc. Employee's Benefit Committee's (the EBC) (collectively defendants) fifth affirmative defense asserting failure to exhaust administrative remedies is insufficient, as a matter of law. Thus, the motion is more appropriately a motion to strike under Fed. R.Civ.P. 12(f).

▪ Defendants filed a cross-motion to dismiss for failure to exhaust administrative remedies. The motion contains matters outside the pleadings and was filed after the answer was submitted. Therefore, pursuant to Fed.R.Civ.P. 12(b), I treat it as a motion for summary judgment. The question of class certification remains pending subject to the resolution of the questions presented by these motions. For the reasons set forth in this order, I grant Unger's motion to strike the fifth affirmative defense and deny Defendants' motion for summary judgment.

## I.

Unger is a retired employee of Mountain States Telephone and Telegraph Company (now US West Communications, Inc., a wholly owned subsidiary of US West Inc.) which is a participant in the Plan. The Plan is an "employee pension benefit plan" under ERISA. 29 U.S.C. § 1002(35). Unger has received benefits under the Plan since January 1984.

The EBC is the named "fiduciary" and "administrator" of the Plan as those terms are defined by ERISA. 29 U.S.C. §§ 1002(21) and 1002(16)(A). US West is a "fiduciary" of the Plan, as well as a "plan sponsor." 29 U.S.C. §§ 1002(21), 1002(16)(A)(i).

The original Plan provided that "The expenses of the Committee shall be borne by the Company." Defendants' Response Brief, Exh. A, § 3(5). On June 7, 1994 the EBC adopted the following resolution amending this section of the Plan:

[A]ll expenses lawfully payable from the assets of the Plan which are incurred or to be borne by the Company either directly (i.e., in the direct exercise of the Company's duties as the Plan Administrator) or indirectly (e.g., by operation of the preceding sentence or through the indirect exercise of the Company's duties through any person or entity to which the Company or its delegate has properly delegated operational or administrative functions), shall be paid from such assets except to the extent the expenses are actually paid by the Company.

Defendants' Response Brief, Kamen Aff., Exh. I. The resolution provides further that "as the foregoing amendment is clarifying in nature and reflective of past practices, it shall be deemed effective with the inception of the Plan." Id. The EBC adopted this amendment in conjunction with an unrelated class action suit. The proposed settlement agreement of that class action required that class counsel be paid from Plan funds. Class counsel questioned whether § 3(5) of the Plan permitted payment of counsel fees from Plan funds. Although defendants disagreed with counsel's interpretation of § 3(5), they adopted the amendment "to preserve the *status quo ante* and thereby facilitate settlement." Defendants' Response Brief, Kamen Aff., ¶ 10.

With regard to the merits of Unger's claim, defendants contend that payment of the EBC's administrative expenses is not governed by the Plan but rather by the terms of the U.S. West Pension Trust (the Trust). Defendants assert that the Trust was incorporated into the Plan pursuant to the following language:

"The Company may direct or authorize a trustee to invest all or a portion of the Plan's assets in a group, commingled, common or master trust fund or funds ... established for the purpose of commingling assets of participating trusts, ... in which event the instrument of trust creating any such ... trust fund ... shall be deemed to have been adopted as a part of the Plan for purposes of Section 401(a) of the Internal Revenue Code of 1954."

Section 10 of the Trust requires the Plan to pay for the reasonable compensation of "the Trustee, Investment Manager, consultant or service-provider to the Trust...." Defendants' Response Brief, Exh. F § 10; Defendants' Response Brief, Kamen Aff., ¶ 8, Exh. F § 10. Defendants contend that the EBC qualifies as a "service provider," thus, its expenses are rightfully borne by the Plan fund.

Defendants' present motion asserts that Unger failed to exhaust the Plan's administrative procedures before bringing this action. A participant in the Plan can bring a claim for benefits under the procedures provided for in § 13.2 of the Plan. If a participant is denied benefits, the participant can appeal this decision within a reasonable time after receiving written notification of the denial of the claim. Defendants contend this administrative review process is available to Unger for presentation of his claim that the Plan fiduciaries improperly charged administrative expenses to the Plan.

Under the Plan, the EBC has always had the power to determine issues related to the administration of the Plan. The original Plan provided that "The Committee shall determine conclusively for all parties all questions arising in the administration of the Plan and any decision of such Committee shall not be subject to further review." Defendants' Response Brief, Exh. C, § 3(4). The current Plan provides:

The Committee and the Participating Company Committees shall administer the Plan and shall have all power and authority necessary for that purpose, including, but not by way of limitation, the full discretion and power to interpret the Plan, to determine the eligibility, status and rights of all persons under the Plan and in general to decide any dispute. The Committee shall have the discretion and authority to determine conclusively for all parties all questions arising in the administration of the Plan, and any decision of the Committee shall not be subject to further review.

Defendants' Response Brief, Exh. E, § 8.7. Defendants do not challenge the right of judicial review of the EBC's decisions although the plain language seems to say otherwise. Defendants argue that under either this provision or section 13.2 Unger is required to present his claim challenging Plan administration in the first instance to the EBC.

## II.

Motions to strike are generally disfavored, but are within the district court's sound discretion. *F.D.I.C. v. Isham,* 782 F.Supp. 524, 530 (D.Colo.1992). Rule 12(f) provides for striking affirmative defenses that are insufficient. Fed.R.Civ.P. 12(f). An affirmative defense is insufficient if, as a matter of law, the defense cannot succeed under any circumstance. *Isham,* 782 F.Supp. at 530.

Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## III.

Unger alleges in his complaint that defendants breached their fiduciary duties by paying EBC's administrative expenses out of Plan funds contrary to the terms of the Plan. Defendants contend that Unger must exhaust the Plan's administrative remedies before bringing this action.

Sections 1132(a)(1), (a)(2) and (a)(3) of the Act permit a plan participant or beneficiary to bring a civil action for (1) a claim for benefits or clarification of rights, (2) a breach of fiduciary duty, or (3) enforcement of a statutory provision or term of the Plan. 29 U.S.C. §§ 1132(a)(1), (a)(2) & (a)(3). Counsel for defendants conceded at oral argument that Unger's claim is not one for benefits under the Plan.

Section 1132 is silent as to whether a participant or beneficiary must exhaust administrative remedies as a prerequisite to bringing a claim in court. In contrast, § 1133 requires an ERISA plan provide an individual who is denied a claim for benefits under a plan an opportunity for a "full and fair review by the appropriate named fiducia-

ry of the decision denying the claim." 29 U.S.C § 1133. Relying on the language of § 1133, courts have held that Congress intended that ERISA claims be addressed in an internal claims procedure in order to minimize frivolous suits. *See Powell v. A.T. & T. Communications, Inc.*, 938 F.2d 823, 826 (7th Cir.1991). Where the claim is strictly a claim for benefits under an ERISA plan, courts are generally in agreement that exhaustion of administrative remedies is required pursuant to § 1133. *See Held v. Manufacturers Hanover Leasing Corporation*, 912 F.2d 1197 (10th Cir.1990); *Amaro v. Continental Can Company*, 724 F.2d 747 (9th Cir.1984). However, where the claim alleges a statutory violation rather than a mere denial of benefits under an ERISA plan, the courts are split regarding the exhaustion requirement. *See Held v. Manufacturers Hanover Leasing Corporation*, 912 F.2d 1197 (10th Cir.1990); *Kross v. Western Electric Company, Inc.*, 701 F.2d 1238 (7th Cir.1983); *Amaro v. Continental Can Company*, 724 F.2d 747 (9th Cir.1984); *Bird v. Shearson Lehman/American Express, Inc.*, 926 F.2d 116 (2nd Cir.1991).

The requirement that administrative remedies be exhausted presupposes the existence of a full, fair administrative process that can address the claim and provide an appropriate remedy. Although the Plan grants the EBC "the full discretion and power to interpret the Plan, to determine the eligibility, status and rights of all persons under the Plan and in general to decide any dispute," the Plan provides no procedure whatsoever for resolving disputes other than for denial of benefits under § 13.2. Contrary to defendants' assertion, section 13.2 does not cover claims challenging Plan administration. This is evidenced by the employee Plan summary provided to each Plan participant. Oral Argument, Plaintiff's Exh. 2. The Plan summary outlines the procedures available to a participant for making a claim for benefits. These procedures include:

a) the right to make a claim for benefits with written notification of a decision within 90 days of receipt of the written claim subject to a 90 day extension if requested by the administrator;

b) a written report containing the specific reasons for the denial of benefits, the plan provision on which the denial is based, and the procedure for requesting a review;

c) a period to request review which will not be less than 60 days.

d) a decision within 60 days of the written request for review, in writing with the specific reasons for denial and the plan references on which it is based.

Oral Argument, Plaintiff's Exh. 2, Bates # 0002721.

■ The Plan summary has a provision entitled "Your rights under ERISA." This section states "If your claim for benefits is denied in whole or in part after a *final review*, you may file suit in a state or federal court." (emphasis supplied). However, the Plan summary also states that "If the fiduciaries misuse a plan's money or if you are discriminated against for pursuing a benefit or exercising your ERISA rights, you may seek help from the United States Department of Labor or file suit in federal court." Oral Argument, Plaintiff's Exh. 2, Bates # 0002724. In contrast to a claim for benefits, neither the Plan nor the Plan summary provide a process or procedural protections to resolve Unger's breach of fiduciary duty claim against the Plan fiduciaries. And, of course, a claim of breach of fiduciary duty is distinct substantively from a claim relating to benefits. Therefore, Unger would be afforded only ad hoc procedural protections that the fiduciary defendants chose to provide him. Under these circumstances, defendants have no incentive to fairly or expeditiously decide Unger's claim. Thus, Unger faces the real prospect of losing substantive rights, as ERISA imposes a three year limitations period for filing claims alleging breach of fiduciary duties once a plaintiff has actual knowledge of the breach. 29 U.S.C. § 1113.

More fundamental still is the maxim that no man should be the judge in his own case. "No man is allowed to be a judge in his own cause, because his interest would certainly bias his judgment, and, not improbably, corrupt his integrity. With equal, nay with greater reason, a body of men are unfit to be both judges and parties at the same time...." Madison, the Federalist No. 10,

p. 79; *see also Gutierrez de Martinez v. Lamagno,* —— U.S. ——, 115 S.Ct. 2227, —— L.Ed.2d —— (1995). I find the Plan wholly inadequate to address Unger's claim. It would be folly to require Unger to exhaust administrative remedies that don't exist.

■ Unger argues in the alternative that administrative exhaustion would be futile. The benefits of administrative exhaustion were explored by the Sixth Circuit in *Costantino v. TRW Inc.,* 13 F.3d 969, 975 (6th Cir.1994). The purposes of administrative exhaustion include:

(1) To help reduce the number of frivolous law-suits under ERISA.

(2) To promote the consistent treatment of claims for benefits.

(3) To provide a nonadversarial method of claims settlement.

(4) To minimize the costs of claims settlement for all concerned.

(5) To enhance the ability of trustees of benefit plans to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making process.

(6) To enhance the ability of trustees of benefit plans to correct their errors.

(7) To enhance the ability of trustees of benefit plans to interpret plan provisions.

(8) To help assemble a factual record which will assist a court in reviewing the fiduciaries' actions.

If these purposes would not be furthered, then administrative exhaustion is fruitless.

This lawsuit is not frivolous in nature, nor is it the type of claim which is likely to reoccur. Therefore, consistency is not at issue. As discussed previously, there is no procedure for presenting this type of claim under the Plan. Although, there may be some benefit derived from permitting trustees or fiduciaries to initially interpret a plan, where as here, the fiduciaries have already determined the meaning of the Plan, there is minimal or no benefit to be gained from administrative exhaustion. Finally, it is not clear whether the EBC has the power to provide Unger with the remedy he seeks. In short, I conclude that the purposes underlying the administrative exhaustion rule would be frustrated, not furthered under the circumstances of this case. I further conclude that administrative exhaustion is futile. *Id.* Accordingly, under the circumstances here, as a matter of law the defense of failure to exhaust administrative remedies cannot succeed.

Accordingly it is **ORDERED** that:

1) Plaintiff's motion to strike is granted; and

2) Defendants' motion for summary judgment is denied.